UNITED STATES of America, Appellee,

v.

Steven RICCIARDELLI, Defendant, Appellant.

No. 92–1424.

United States Court of Appeals, First Circuit.

Heard Jan. 5, 1993.

Decided June 22, 1993.

John H. LaChance, with whom LaChance & Whatley, Framingham, MA, was on brief, for defendant, appellant.

Robert E. Richardson, Asst. U.S. Atty., with whom A. John Pappalardo, U.S. Atty., Boston, MA, was on brief, for appellee.

Before TORRUELLA, SELYA and STAHL, Circuit Judges.

SELYA, Circuit Judge.

Defendant-appellant Steven Ricciardelli was convicted at a bench trial of violating 18 U.S.C. § 2252(a)(2) (1988), a statute that criminalizes the knowing receipt through the mails of a "visual depiction [that] involves the use of a minor engaging in sexually explicit conduct...." Ricciardelli appeals, contending that the district court erred in denying his motion to suppress evidence obtained pursuant to the execution of an anticipatory search warrant. We conclude that, although the Constitution does not altogether proscribe the use of such anticipatory warrants, the warrant employed here was constitutionally infirm. We, therefore, reverse.

## I. BACKGROUND

In 1988, Houston police breathed life into a moribund child pornography investigation by giving federal postal inspectors a customer list unearthed during a 1975 probe of a suspected pornography distributor. Appellant's name appeared on the list. The postal inspectors subsequently spawned a fictitious "front" company, Globe–Tex Specialties, and targeted Ricciardelli in a sting operation. After preliminary correspondence elicited interest on Ricciardelli's part, Globe–Tex sent him a catalog from which he ordered several videotapes. Globe–Tex notified him that only one tape was immediately available and promised to mail it forthwith.

On the day prior to the scheduled delivery, the postal inspectors applied for, and a magistrate judge issued, a search warrant. The warrant authorized the investigators to search appellant's residence for, *inter alia,* correspondence, documents, and objects related to contacts with either Globe–Tex or the Houston pornography dealer. By its express terms, the search warrant would "not be effective until after delivery by mail to and receipt by Steven L. Ricciardelli of the ... package containing the videotape."

The day after the warrant was issued, postal inspectors gave the package containing the videotape to the local post office for delivery. A return receipt, affixed to the parcel, required that appellant sign for it. The letter carrier tried to deliver the package that day but appellant was not home.

Following standard practice, the postman left a notice on the premises indicating that appellant could collect the item at the post office. That afternoon, appellant retrieved the package and returned to his home. About thirty minutes later, postal inspectors executed the warrant, recovering the videotape, some correspondence, and a number of other films and magazines not mentioned in the warrant.

Appellant was indicted. The district court summarily denied his motion to suppress the materials seized from his dwelling. Subsequently, appellant stipulated to the pertinent facts and the judge found him guilty. This appeal ensued.

## II. ANALYSIS

We divide our analysis of this case into segments. We first discuss the constitutionality of anticipatory search warrants as a general matter. We then turn to specifics, discussing certain alleged deficiencies in the warrant obtained by the postal inspectors. We end by addressing the government's contentions that appellant's submissiveness and/or the postal inspectors' good faith palliated any defects in the warrant.

### A. *Anticipatory Search Warrants.*

At the outset, appellant seeks to bowl a ten-strike: he asks us to rule that so-called anticipatory search warrants are *per se* unconstitutional. This initiative presents a question of first impression in this circuit.[1]

Anticipatory search warrants are peculiar to property in transit. Such warrants provide a solution to a dilemma that has long vexed law enforcement agencies: whether, on the one hand, to allow the delivery of contraband to be completed before obtaining a search warrant, thus risking the destruction or disbursement of evidence in the ensuing interval, or, on the other hand, seizing the contraband on its arrival without a warrant, thus risking suppression. Anticipatory

warrants—warrants that are issued in advance of the receipt of particular property at the premises designated in the warrant[2]—strike a third chord, protecting privacy rights by requiring advance judicial approval of a planned search while simultaneously satisfying legitimate law enforcement needs. *See United States v. Garcia,* 882 F.2d 699, 703 (2d Cir.), *cert. denied,* 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989); *see also* 2 Wayne LaFave, *Search and Seizure* § 3.7(c), at 97 (1987).

Appellant's constitutional challenge to the use of anticipatory warrants proceeds under the aegis of the Fourth Amendment. His theory is epibolic. First, he remarks the obvious—that a warrant can issue only "upon a showing of probable cause," U.S. Const. Amend. IV—and interprets this as requiring probable cause to believe that the contraband to be seized is in the place to be searched at the time a warrant issues. He then erects a second proposition on this problematic pedestal, professing that a magistrate can have no constitutionally sufficient basis for issuing a warrant at a time when the contraband is elsewhere and, presumably, probable cause does not exist. In our view, appellant's theory misconstrues the meaning of probable cause.

 The probable cause doctrine does not require that the contraband to be seized must presently be located at the premises to be searched, only that there is probable cause to believe that a crime has been (or is being) committed and that evidence of it can likely be found at the described locus *at the time of the search. See United States v. Aguirre,* 839 F.2d 854, 857–58 (1st Cir.1987). "Probability is the touchstone [of probable cause]...." *United States v. Figueroa,* 818 F.2d 1020, 1023 (1st Cir.1987) (collecting cases). In the stereotypical case, an item's current location creates a probability that it will be at the same location when the search is executed—but there are no guarantees.

---

1. We cannot escape this issue for, if anticipatory search warrants are valid at all, the rules pertaining to their issuance will necessarily determine the legal sufficiency of the warrant obtained in this case.

2. To be sure, an anticipatory warrant can be directed toward the search of a person instead of a place. For ease in reference, however, we speak throughout this opinion of searches of places rather than of persons (although we note that the same principles apply in either case).

The suspect might move or destroy the contraband before the warrant is executed. Nevertheless, so long as the requisite *probability* exists, the *possibility* that things might go awry does not forestall the issuance of a warrant. After all, "[p]robable cause need not be tantamount to proof beyond a reasonable doubt." *United States v. Hoffman*, 832 F.2d 1299, 1305–06 (1st Cir.1987); *accord Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (requiring "a fair probability that contraband ... will be found in a particular place"); *United States v. Caggiano*, 899 F.2d 99, 102 (1st Cir.1990) (collecting cases).

Seen from this perspective, it is difficult to discern the constitutional objection to an anticipatory warrant. In many cases, the facts put forward in support of an anticipatory search warrant predicated on the planned delivery of contraband to a particular location establish a greater likelihood that the contraband will be found there at the time of the search (which will be contemporaneous with the arrival of the contraband, or nearly so) than do facts put forward in support of a more conventional search warrant predicated on the known recent location of contraband at the proposed search site. Moreover, the method of the Fourth Amendment—inserting a neutral, detached judicial officer as a buffer between a citizen's privacy rights and potential government overreaching—works equally as well in connection with anticipatory warrants. In either instance, contemporary or anticipatory, the focal point of the magistrate's inquiry is whether there is probable cause to think that the contraband will be at the place to be searched at the time of the contemplated intrusion. That the event justifying the intrusion has not yet occurred does not distort the decisionmaking process. Rather, the magistrate must simply widen his horizons to take into account the likelihood that the triggering event will occur on schedule and as predicted in making his probable cause determination.[3]

Mindful of these considerations, we find it unsurprising that every circuit to have addressed the question has held that anticipatory search warrants are not categorically unconstitutional. *See, e.g., United States v. Tagbering*, 985 F.2d 946, 950 (8th Cir.1993); *United States v. Wylie*, 919 F.2d 969, 974–75 (5th Cir.1990); *United States v. Goodwin*, 854 F.2d 33, 36 (4th Cir.1988); *United States v. Goff*, 681 F.2d 1238, 1240 (9th Cir.1982); *United States v. Lowe*, 575 F.2d 1193, 1194 (6th Cir.), *cert. denied*, 439 U.S. 869, 99 S.Ct. 198, 58 L.Ed.2d 180 (1978); *United States ex rel. Beal v. Skaff*, 418 F.2d 430, 432–33 (7th Cir.1969); *see also United States v. Nixon*, 918 F.2d 895, 903 n. 6 (11th Cir.1990) (dictum). We, too, believe that there is no Fourth Amendment infirmity indigenous to anticipatory search warrants—although such warrants must, of course, be issued under proper circumstances, upon a proper showing, and with proper safeguards. We hold, therefore, that when law enforcement personnel offer a magistrate reliable, independent evidence indicating that a delivery of contraband will very likely occur at a particular place, and when the magistrate conditions the warrant's execution for the search of that place on that delivery, the warrant, if not overbroad or otherwise defective, passes constitutional muster. That the contraband has not yet reached the premises to be searched at the time the warrant issues is not, in constitutional terms, an insuperable obstacle.

### B. *Exigent Circumstances.*

Appellant next suggests that, even if anticipatory warrants are not invalid *per se*, their use must be confined to circumstances in which time is of the essence, *e.g.*, drug cases, where a significant danger lurks that the evidence might be lost if the search is not made in close temporal proximity to the con-

3. This is not very different than a magistrate issuing a warrant for a wiretap—a warrant which, in actuality, contemplates a "seizure" of specific oral communications which, by definition, do not exist at the time of the warrant's issuance. Such a warrant can appropriately be viewed as an anticipatory warrant for the seizure of words: the magistrate issues the warrant on the basis of a substantial probability that crime-related conversations will ensue. Clearly, such warrants are permitted under the Fourth Amendment. *See Katz v. United States*, 389 U.S. 347, 354–55, 88 S.Ct. 507, 512–13, 19 L.Ed.2d 576 (1967); *Berger v. New York*, 388 U.S. 41, 63, 87 S.Ct. 1873, 1885, 18 L.Ed.2d 1040 (1967).

traband's delivery. We disagree: the absence of exigent circumstances—and the government readily concedes that none are present here—does not outlaw the use of an anticipatory warrant.

We need not linger. The Eighth Circuit recently rejected this precise argument. In *Tagbering*, the court stated that the presence or absence of exigent circumstances is irrelevant in determining whether an anticipatory search warrant should issue. *See Tagbering*, 985 F.2d at 950 n. 6. We share this view. Where the probable cause requirement for an anticipatory search warrant has been fulfilled, there is no necessity for an independent showing of exigent circumstances. *Cf. United States v. Panitz*, 907 F.2d 1267, 1270 (1st Cir.1990) (reiterating that where a vehicle search is supported by probable cause, no exigency need exist to justify warrantless search).

The logic behind this conclusion is inescapable.[4] Probable cause is probable cause; the justification for a search does not vanish merely because the circumstances are such that the evidence could have been obtained through a more familiar method. *See United States v. Johns*, 469 U.S. 478, 484, 105 S.Ct. 881, 885, 83 L.Ed.2d 890 (1985); *United States v. LaFrance*, 879 F.2d 1, 4–5 (1st Cir.1989); *United States v. McHugh*, 769 F.2d 860, 865–66 (1st Cir.1985); *see also United States v. Rabinowitz*, 339 U.S. 56, 66, 70 S.Ct. 430, 435, 94 L.Ed. 653 (1950) ("The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable."). That the authorities might often be better positioned in child pornography investigations than in drug investigations to obtain a conventional search warrant does not cheapen the value of the magistrate's initial probable cause determination and, thus, "is not dispositive of any relevant issue." *Panitz*, 907 F.2d at 1271 n. 3. Consequently, we hold that an otherwise valid anticipatory warrant does not fail merely because the officers might have lost nothing by waiting until the delivery had been completed before obtaining a warrant.

## C. *Definiteness.*

We now reach the crux of the suppression issue: Was the warrant fatally defective because it failed to forge a sufficient link between the arrival of the videotape and the proposed search of appellant's abode? We think that it was.

Although anticipatory search warrants are not constitutionally foreclosed, *see supra* Part II(A), a warrant conditioned on a future event presents a potential for abuse above and beyond that which exists in more traditional settings: inevitably, the executing agents are called upon to determine when and whether the triggering event specified in the warrant has actually occurred. Consequently, magistrates who are asked to issue such warrants must be particularly vigilant in ensuring that the opportunities for exercising unfettered discretion are eliminated. To satisfy these concerns, the magistrate must set conditions governing an anticipatory warrant that are "explicit, clear, and narrowly drawn so as to avoid misunderstanding or manipulation by government agents." *Garcia*, 882 F.2d at 703–04; *accord Tagbering*, 985 F.2d at 950.

There are two particular dimensions in which anticipatory warrants must limit the discretion of government agents. First, the magistrate must ensure that the triggering event is both ascertainable and preordained. The warrant should restrict the officers' discretion in detecting the occurrence of the event to almost ministerial proportions, similar to a search party's discretion in locating the place to be searched. Only then, in the prototypical case, are the ends of explicitness and clarity served. Second, the contraband must be on a sure and irreversible course to its destination, and a future search of the destination must be made expressly contingent upon the contraband's arrival there. Under such circumstances, a number of

---

4. Indeed, as both *Tagbering* and *Panitz* point out, if exigent circumstances exist, there is, by definition, no need for any kind of search warrant. *See Tagbering*, 985 F.2d at 950 n. 6; *Panitz*, 907 F.2d at 1270 & n. 3. The other side of the coin is equally revealing: exigent circumstances will rarely, if ever, be present in child pornography cases, as history teaches that collectors prefer not to dispose of their dross, typically retaining obscene materials for years.

courts have found anticipatory search warrants to be valid. *See, e.g., Nixon,* 918 F.2d at 903 n. 6; *United States v. Dornhofer,* 859 F.2d 1195, 1198 (4th Cir.1988), *cert. denied,* 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989); *Goodwin,* 854 F.2d at 36; *United States v. Hale,* 784 F.2d 1465, 1468–69 (9th Cir.), *cert. denied,* 479 U.S. 829, 107 S.Ct. 110, 93 L.Ed.2d 59 (1986); *Goff,* 681 F.2d at 1240. We adopt the "sure and irreversible course" standard as a means of judging the validity of anticipatory warrants.

It is at this juncture, however, that we part company with the government. The sure course standard functions as a proxy for the actual presence of the contraband at the locus to be searched. It offers the magistrate a trustworthy assurance that the contraband, though not yet on the site, will almost certainly be located there at the time of the search, thus fulfilling the requirement of future probable cause. *See, e.g., Hale,* 784 F.2d at 1468 (finding a warrant for child pornography that was to be delivered to defendant at his home to be "on a sure course to its destination" and, hence, valid); *Goff,* 681 F.2d at 1240 (finding the requirement met where defendant boarded an airplane and agents then procured a warrant to search him at the flight's terminus).

Implicit in this standard is the recognition that the evidence must be on an ascertainable course so that the event on which the warrant is conditioned bears a definite relationship to the premises to be searched. It is, moreover, imperative that the warrant establish not only this kind of tri-cornered nexus between the criminal act, the evidence to be seized, and the place to be searched, but also that the nexus incorporate a temporal dimension. The important privacy interests protected by the Fourth Amendment make it incumbent upon the magistrate to craft the warrant with explicit, clear, and narrowly drawn conditions governing its execution to ensure that the anticipated nexus will actually exist if and when the warrant is executed. Phrased another way, the event that triggers the search must be the delivery of the contraband *to the premises to be searched,* thereby leaving as little as possible to the discretion of the agent executing the

warrant. *See* 2 LaFave, *supra* § 3.7(d), at 101–02.

The instant warrant imposed no such strict conditions. To the contrary, it overlooked (or, at least, did not address) the need for establishing a nexus between the triggering event and the place to be searched. Here, the warrant authorized a search not of appellant's person but of his home, for evidence relating to his dealings with child pornography distributors. The search was to be triggered by delivery of the videotape. Thus, the very premise on which the warrant rested was that the videotape's arrival would signal the existence of probable cause to believe that evidence of a crime—the videotape itself—as well as evidence of criminal predisposition or other nefarious activity was likely located in the dwelling. The warrant's text, however, completely ignored this connection, conditioning the search not on the arrival of the videotape at the place to be searched, but, rather, on appellant's personal receipt of the videotape, wherever he might be and wherever he might take his prize. By the terms of the warrant, once appellant retrieved the package at the post office, the postal inspectors could have searched his abode whether or not appellant brought the contraband there. An anticipatory search warrant that cedes such great discretion to the executing agents cannot withstand constitutional scrutiny.

In *United States v. Hendricks,* 743 F.2d 653 (9th Cir.1984), *cert. denied,* 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1986), the Ninth Circuit grappled with an almost identical nexus problem when considering the validity of an anticipatory warrant. There, a package containing contraband was shipped in a way that required defendant to pick up the package personally, rather than merely having it delivered to his home. *See id.* at 653. Even though the contraband actually arrived at defendant's residence, the Ninth Circuit invalidated the warrant on the ground that it failed to forge the requisite link between the described premises and the illegal activity. *See id.* at 655. The court reasoned that, although the warrant listed a specific location to be searched, once the box was picked up any number of circumstances

might intervene to snuff out a future connection between it and the premises. *See id.* at 654–55.

The case at hand parallels *Hendricks* in important respects.[5] Here, as in *Hendricks,* the package, once retrieved, could have been taken anywhere. Here, as in *Hendricks,* the conditions governing the execution of the anticipatory search warrant were extremely susceptible to the discretion of the executing officers. Here, as in *Hendricks,* the warrant was too broadly drawn in that it did not ensure that the contraband was on a sure course to the premises to be searched. Here, as in *Hendricks,* even though the defendant happened to take the contraband home, the warrant did not establish an adequate three-way nexus between the criminal activity, the evidence to be seized, and the premises. It follows inexorably that here, as in *Hendricks,* the search warrant was invalid.

Nor can we read the warrant as treating the search of appellant's abode as an event separate from his receipt of the videotape. The affidavit supporting the warrant bases the postal inspectors' conclusions anent probable cause upon appellant's future receipt of the videotape at his home. What is more, it is the triggering condition of appellant's receipt of the videotape at home that eliminates alternative possibilities, say, that appellant was a runner for some other person, or simply an internuncio, thereby producing probable cause to believe that appellant is a collector of child pornography and, hence, that his residence likely contains evidence of his criminality. *See, e.g., id.* at 654 (invalidating warrant where triggering event was not certain and independent probable cause did not exist). Therefore, unless the search can be saved on some other theory, an inquiry to which we now turn, the fruits of the search must be suppressed.[6]

### D. *Consent.*

■ The government asseverates that any infirmity in the search warrant was assuaged by appellant's supposed consent to the postal inspectors' seizure of the videotape. We reject this asseveration on three grounds. In the first place, the record discloses no finding by the district court that appellant consented to a seizure. Second, even if appellant voiced his consent, a court could not plausibly find such consent to have been voluntary in the atmosphere created by the postal inspectors' execution of the invalid warrant. *See, e.g., United States v. Maragh,* 894 F.2d 415, 419–20 (D.C.Cir.) (finding that consent does not cure an unlawful seizure), *cert. denied,* 498 U.S. 880, 111 S.Ct. 214, 112 L.Ed.2d 174 (1990); *see also United States v. Twomey,* 884 F.2d 46, 50–51 (1st Cir.1989) (identifying criteria helpful in determining voluntariness of consent), *cert. denied,* 496 U.S. 908, 110 S.Ct. 2592, 110 L.Ed.2d 273 (1990). Once appellant was led down the garden path, persuaded that the search warrant was unimpugnable, his subsequent consent must be viewed as merely an accommodation to the authorities. *See Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1983); *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 329, 99 S.Ct. 2319, 2325, 60 L.Ed.2d 920 (1979). At any rate, the consent issue is academic because, as the government concedes, the videotape was within the perimeter of the search warrant (which provided for the seizure of all "objects" related to Globe–Tex Specialties). Inasmuch as the videotape is an immediate fruit of an invalid search

---

**5.** To be sure, the case at hand differs from *Hendricks* in the respect that, here, the authorities made an abortive attempt to deliver the package directly to the defendant's residence. We do not consider this distinction to possess decretory significance.

**6.** Our concurring brother takes the view that the warrant cannot stand because it was based in part on stale information. *See, e.g., United States v. Bucuvalas,* 970 F.2d 937, 940 (1st Cir.1992) (discussing criteria for reliability of information on which probable cause determination is based), *cert. denied,* —— U.S. ——, 113 S.Ct. 1382, 122 L.Ed.2d 758 (1993). We find this proposition troubling, as it overlooks the undeniable fact that, in addition to what transpired in the past, the affidavit also contains ample "non-stale" information concerning appellant's ordering of illicit materials from Globe–Tex shortly before the search warrant issued. In any event, given our conclusion that the warrant is void for indefiniteness, we need not resolve the staleness question.

warrant, it must be suppressed.[7] *See Illinois v. Rodriguez*, 497 U.S. 177, 183, 110 S.Ct. 2793, 2799, 111 L.Ed.2d 148 (1990).

### E. *Good Faith.*

██ The government strains to persuade us that, even if the warrant self-destructs, the evidence seized can be used against Ricciardelli under the good faith exception to the exclusionary rule. We are not convinced.

In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court explained that the exclusionary rule is a deterrent measure designed to ensure compliance with the Fourth Amendment. *See id.* at 906, 104 S.Ct. at 3411. The Court believed that there would often be no deterrence when police obtain evidence in reliance on a search warrant that is subsequently found to be defective; "in most such cases, there is no police illegality and thus nothing to deter." *Id.* at 921, 104 S.Ct. at 3419. Hence, exclusion of seized evidence under those conditions serves no salutary purpose because that sanction "cannot logically contribute to the deterrence of Fourth Amendment violations." *Id.*

Although weakening the exclusionary rule, the Court did not defenestrate it. The Justices acknowledged that suppression would continue to be appropriate in situations where, notwithstanding the issuance of a warrant, "the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Id.* at 919, 104 S.Ct. at 3419. Thus, to cite two instances, suppression would be proper where the "warrant [is] ... so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized— that the executing officers cannot reasonably presume it to be valid," or the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923, 104 S.Ct. at 3421 (citation and internal quotation marks omit-

ted). If, however, the warrant's defectiveness results from mere technical errors, *see Massachusetts v. Sheppard*, 468 U.S. 981, 984, 990–92, 104 S.Ct. 3424, 3425, 3428–29, 82 L.Ed.2d 737 (1984), bevues by the magistrate not readily evident to a competent officer, *see United States v. Bonner*, 808 F.2d 864, 867 (1st Cir.1986) (suggesting that exclusion of evidence is inappropriate where the magistrate, as opposed to the officers, is responsible for a defective warrant), *cert. denied*, 481 U.S. 1006, 107 S.Ct. 1632, 95 L.Ed.2d 205 (1987), or borderline calls about the existence of probable cause, *see Leon*, 468 U.S. at 926, 104 S.Ct. at 3422 (favoring non-exclusion in situations where the warrant is based on "evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause"), then the evidence may be used, despite the warrant's defectiveness.

To summarize, the exclusionary rule is alive and well to the extent that a warrant's defectiveness results from either (1) non-technical errors of a kind that a reasonably prudent officer would (or should) have recognized, or (2) law enforcement officers' acts or omissions of a kind that a reasonably prudent officer would have avoided. *See* 1 LaFave, *supra* § 1.2(d), at 38 (explaining that searching officer's erroneous understanding of Fourth Amendment limits on his power still presents a compelling case for exclusion).

After *Leon*, how does a court tell whether a defect in a warrant is fatal? In determining whether a reasonable officer should have known that a search was illegal despite a magistrate's authorization, a court must evaluate all the attendant circumstances, *see Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23; *Earle v. Benoit*, 850 F.2d 836, 848 (1st Cir.1988), keeping in mind that *Leon* requires not merely good faith, but objective good faith. *See United States v. Curzi*, 867 F.2d 36, 44 (1st Cir.1989). And when, as now, a government agent asserts good faith reliance on a magistrate's decision to issue a warrant, the court must focus upon the exis-

---

7. We need not consider the effect of appellant's alleged consent on the suppression of magazines and other detritus not encompassed by the search warrant. The short, conclusive answer in regard to such items is that the government did not seek to use them against appellant or introduce them into evidence at the trial. Any controversy anent such items is, therefore, moot. *See, e.g., Smith v. INS*, 585 F.2d 600, 602 (3d Cir. 1978).

tence *vel non* of objective good faith at the time of the warrant application. *See Malley v. Briggs,* 475 U.S. 335, 344–45, 106 S.Ct. 1092, 1097–98, 89 L.Ed.2d 271 (1986); *Earle,* 850 F.2d at 848.

Here, the government fails both parts of the good faith test. After studying the record on appeal, we conclude that the warrant, as issued, contained non-technical defects readily observable to experienced postal inspectors and, moreover, that the inspectors' omissions in the warrant-application process constituted a second, independently sufficient ground for distinguishing this case from *Leon.* Accordingly, the evidence seized under the anticipatory warrant and introduced at trial should have been suppressed.

In connection with the first prong of the test, we find, without serious question, that the defects on the warrant's face were apparent enough that the postal inspectors should have realized that it did not comport with the Fourth Amendment. The law was settled that the conditions governing the execution of anticipatory warrants must be explicit, clear, and narrowly drawn. The instant warrant plainly did not satisfy these criteria; and, furthermore, the principal omission in the warrant—the lack of any requirement that the contraband arrive at the premises— was both glaring and easily correctable. Examining the postal inspectors' actions in this light, it is crystal clear that they could, and should, have asked the magistrate to condition the search of appellant's home on the delivery of the videotape there; failing both to insert this condition and to recognize the consequences of its omission constituted objectively unreasonable conduct. It follows, then, that attempting to execute an anticipatory search warrant bereft of such a limiting condition fell "outside the range of professional competence expected" of federal agents.[8] *Malley,* 475 U.S. at 346 n. 9, 106 S.Ct. at 1098 n. 9; *see also United States v. Washington,* 797 F.2d 1461, 1473 (9th Cir. 1986) (ruling that "patently overbroad" war-

rant did not give rise to objective good faith under *Leon*); *United States v. Crozier,* 777 F.2d 1376, 1382 (9th Cir.1985) (concluding that overbreadth in a search warrant comprised "no mere technical error").

Although the failure to correct evident defects is itself sufficient to support suppression here, it is also true that other omissions attributable to the agents would, independently, have required the same result. Government agents may not trespass beyond the bounds of well-delineated Fourth Amendment procedures and then attempt to blunt the effects of their perorations by foisting the blame on the magistrate. *See Malley,* 475 U.S. at 346 n. 9, 106 S.Ct. at 1098 n. 9; *United States v. Baker,* 894 F.2d 1144, 1148 (10th Cir.1990). This principle applies with especial force where, as in this case, a sting operation, culminating in a controlled delivery, is involved. The government knew the plot; indeed, it invented Globe–Tex and produced the sting from start to finish. Yet, the postal inspectors failed to share the full script of their stage-play with the magistrate. They cannot now fault the magistrate for their bad reviews.

In this respect, the case at bar is reminiscent of *United States v. Fuccillo,* 808 F.2d 173 (1st Cir.), *cert. denied,* 482 U.S. 905, 107 S.Ct. 2481, 96 L.Ed.2d 374 (1987). In *Fuccillo,* we held that the good faith exception would not salvage a search where, *inter alia,* the warrant did not sufficiently describe the things to be seized, because the officer possessed facts which should have enabled him to describe the property to be seized more accurately. *Id.* at 177, 178 (stating that the warrant "could have been written with precision to assure that appellee's personal rights would remain inviolate" and that "the agents were reckless in not including in the affidavit information which was known or easily accessible to them"). Where the omission of a key ingredient, known to the law enforcement officers, leads to the subsequent invalidation of the warrant, the government faces a high

---

**8.** While the standard is one of objective reasonableness, we note that the postal inspectors who orchestrated this operation were veterans of the government's war against child pornography. In the affidavit accompanying the application for the search warrant, one of the postal inspectors

stated that he had "been involved in approximately 300 child pornography and child sexual exploitation investigations" and had "personally been involved in the execution of at least 75 search warrants ... relative to child sexual exploitation investigations."

hurdle in seeking to show objective good faith.

When issuing anticipatory warrants, magistrates must rely to a large extent on the expertise of federal agents as to the certainty that the triggering event will occur. Particularly where, as in this case, the agents preset elaborate plans to search and seize, magistrates can only act to ensure respect for the Fourth Amendment's protections if they are informed of the plan's discretionary elements. Thus, the postal inspectors here were responsible for conveying to the magistrate the various possible outcomes in their scheme to deliver the Globe–Tex package to Ricciardelli. In particular, the inspectors should have apprised the magistrate of the (apparently significant) chance that the package would not be delivered to Ricciardelli's home at all—a possibility that they undeniably had envisioned.[9] Fully informed, the magistrate might have drawn a more finely tuned warrant. *See Rivera v. United States,* 928 F.2d 592, 603 (2d Cir.1991); *see also Fuccillo,* 808 F.2d at 178 (warning that, in applying for a warrant, agents must "take every step that could reasonably be expected of them").

In fine, the *Leon* doctrine does not apply in this case both because a reasonably prudent officer should have known that the procured warrant was substantially defective on its face, and because the defect was largely, if not entirely, the result of the officers'

incomplete account to the magistrate.[10] In the circumstances, the magistrate's imprimatur on the warrant cannot save the day. The exclusionary rule obtains. Suppression of the evidence seized by means of the invalid warrant is appropriate "to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." *Mapp v. Ohio,* 367 U.S. 643, 656, 81 S.Ct. 1684, 1692, 6 L.Ed.2d 1081 (1961).

## III. CONCLUSION

We need go no further.[11] Although anticipatory search warrants are constitutionally allowable, the warrant used in this case suffered from a fatal defect that was neither cured by any enforceable consent nor subject to amelioration under the *Leon* doctrine. Accordingly, appellant's motion to suppress the fruits of the search should have been granted.

*Appellant's conviction is vacated and the district court's denial of appellant's motion to suppress is reversed.*

TORRUELLA, Circuit Judge (concurring).

Although I agree that appellant's conviction should be vacated, I have serious reservations about the majority's approach to that result. The majority unnecessarily addresses the constitutional validity of anticipatory search warrants and, having done that, resolves the issue incorrectly.

---

**9.** At the suppression hearing, Inspector Dunn, whose affidavit supported the search warrant; testified that the inspectors' plan to execute the search warrant "[d]epend[ed] on what [Ricciardelli] did after he picked it up." His affidavit, however, did not disclose to the magistrate the variety of possible outcomes or the inspectors' contingency plans.

**10.** Although the point is not instrumental to either the analysis or the outcome here, we note that the *Leon* exception does not absolve government officers from every mistake made in good faith during the execution of a warrant. *See, Leon,* 468 U.S. at 920, 104 S.Ct. at 3419; *see also United States v. Strand,* 761 F.2d 449, 456–57 (8th Cir.1985) (holding *Leon* inapplicable to seizures outside the scope of a warrant). For instance, *Leon's* good faith rule would not excuse full-blown mistakes in the execution of a warrant. *See, e.g., Maryland v. Garrison,* 480 U.S. 79, 89 n. 14, 107 S.Ct. 1013, 1019 n. 14, 94

L.Ed.2d 72 (1987) (explaining that, when "police begin to execute the warrant and ... discover [a] factual mistake[, they] must reasonably limit their search accordingly"). Hence, if a situation arises in which officers wrongly conclude that the triggering event needed to animate an anticipatory warrant has occurred, and proceed to execute a full search in the face of this mistake, we would not review that mistake under *Leon's* good faith standard.

**11.** After this appeal was fully briefed, but before oral argument, the Ninth Circuit struck down the Protection of Children Against Sexual Exploitation Act, 18 U.S.C. §§ 2251–2255 (1988), of which section 2252(a)(2) is a part, on constitutional grounds. *See United States v. X-citement Video, Inc.,* 982 F.2d 1285, 1292 (9th Cir.1992). This issue was neither briefed nor argued before us. Hence, we take no view of the statute's constitutionality.

I begin by describing the areas in which my views are most similar to those of the majority. We both agree that the warrant in this case was utterly unsupported by probable cause. I find, however, that the warrant was tainted by information too stale to carry the crisp reliability necessary to find probable cause. While the majority contentedly dismisses this aspect of the case, *ante* at 14 n. 6, I believe that it provides for the proper resolution of this appeal.

As the majority eloquently states, "In 1988, Houston police breathed life into a moribund child pornography investigation by giving federal postal inspectors a customer list unearthed during a 1975 probe of a suspected pornography distributor." *Ante* at 9. The activity unearthed by the moribund investigation—appellant ordered two films from a child pornography dealer—occurred in 1974. In 1990, postal inspectors conducted a sting which lured appellant to buy forbidden films, and applied for a warrant to search his home for those and other materials. The 1990 operation and warrant application were based, thus, on appellant's activities which occurred sixteen years before.

In this circuit, we do not measure staleness merely on the basis of the maturity of the information. *United States v. Bucuvalas,* 970 F.2d 937, 940 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1382, 122 L.Ed.2d 758 (1993). Other factors include 1) whether the criminal activity is ongoing or discrete; 2) whether the criminal is entrenched or nomadic; 3) whether the items to be seized are long-lasting or perishable; and 4) whether the premises to be searched are a secure operating base or a mere criminal forum. *Id.* The application of these factors to the facts of the present case, some not fully detailed in the majority opinion, discloses the stagnant heart of this case.

First, the statute that appellant is accused of violating, 18 U.S.C. § 2252(a)(2), prohibits the receipt of child pornography through interstate commerce or mail. The evidence in the record of this case shows that appellant only engaged in this activity twice, on occasions separated by sixteen years. The activity clearly cannot be described as ongoing.

This conclusion is buttressed by the fact that when appellant placed the first order, in 1974, the receipt of child pornography through the mail was not prohibited. An early version of § 2252 did not appear until 1978, with a substantial amendment occurring in 1984, *ten years* after appellant's first order. Thus, appellant's first order was not even *illegal.* This is a point that must be emphasized. There was no ongoing illegal activity in this case, because appellant acted illegally only once, when the government induced him to do so in a sting operation. In other words, appellant's recent purchase did not update the 1974 purchase, because those earlier activities are not comparable in terms of violation of the law.

Appellant's nomadic nature also negates the ongoing reliability of his 1974 activity. At that time, appellant lived in Newton, Massachusetts. Appellant later moved to Framingham, Massachusetts, and yet again to another address in Framingham. Appellant lived at his final residence with his mother and brother, sharing a room with his sibling. The affidavit contained no information even tending to show that appellant retained the 1974 materials through these relocations, or that his coresidents tolerated the presence of prurient material in the shared premises.

I concede that the affidavit showed the ongoing utility of child pornography to collectors and pedophiles, discussing how such individuals keep their dross for long periods of time. Standing alone, however, this information does not justify the conclusion that appellant kept the materials throughout sixteen years and two relocations. The affidavit did not define collector and pedophile, or characterize appellant as a member of either class. *See United States v. Weber,* 923 F.2d 1338, 1345 (9th Cir.1990) (concerning similar affidavit, the court noted "the affidavit does not say how many magazines or pictures one must buy in order to be defined as a 'collector'"). As such, the affidavit is inconclusive as to the ongoing utility of the materials to appellant, especially in light of his various relocations and the long passage of time. Additionally, it cannot be presumed automatically that appellant would keep material which was illegal as a result of subsequent

legislation, once such a law went into effect in 1978.

Finally, there is no showing that appellant's address was a secure base. The affidavit did not adduce that appellant kept a cache of child pornography there, and appellant's relocations weaken the existence of this possibility. The affidavit merely established that the address was appellant's home, which he shared with his mother and brother. Again, the fact that he shared his premises with nonparticipants in the criminal enterprise is a weakening point in terms of the presence of contraband at that location.

Based on these factors, I find it easy to conclude that the information pertaining to appellant's 1974 materials could not support a probable cause finding in this case. Yet, the stagnant information formed the heart of the inspector's affidavit and was the only basis for the attenuated inference that appellant amassed child pornography at his home. Without it, the sting operation and the search warrant fall. This is as far as we should go, proceeding directly to quash the conviction. It is unnecessary to go further into constitutional speculation.

The majority proceeds, however, to answer unnecessarily a wholly novel question for this circuit: whether the anticipatory search warrant in this case was constitutional. Worse yet, it issues a blanket license allowing its proliferation into common use.

For the majority to do so is an imprudent exercise of our judicial power. It is axiomatic that we avoid constitutional rulings unless they are strictly necessary. *El Día, Inc. v. Hernández Colón,* 963 F.2d 488, 494 (1st Cir.1992) (citing *Alabama State Federation of Labor v. McAdory,* 325 U.S. 450, 461, 65 S.Ct. 1384, 1389, 89 L.Ed. 1725 (1945); *Ashwander v. Tennessee Valley Auth.,* 297 U.S. 288, 346–55, 56 S.Ct. 466, 482–87, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); *Aggarwal v. Ponce School of Medicine,* 745 F.2d 723, 726 (1st Cir.1984)). The long standing rationale for this rule is to avoid issuing advisory opinions. *United States v. Hastings,* 296 U.S. 188, 193, 56 S.Ct. 218, 220, 80 L.Ed. 148 (1935). Because the search warrant in this case was utterly unsupported by probable cause, addressing the constitution-

ality of anticipatory search warrants amounts to such an impermissible advisory opinion.

To complicate matters, the majority elects the wrong side of this unnecessary constitutional issue, choosing a problematic and erroneous result in this case. Anticipatory search warrants are violative of the Fourth Amendment, which plainly states that "no Warrants shall issue, but upon probable cause." Probable cause must exist to believe *at the time of issuance* that the contraband *is* in the place to be searched. *Steagald v. United States,* 451 U.S. 204, 213, 101 S.Ct. 1642, 1648, 68 L.Ed.2d 38 (1981) (warrants issue upon showing of "probable cause to believe that the legitimate object of a search *is* located in a particular place") (emphasis added); *United States v. Salvucci,* 599 F.2d 1094, 1096 (1st Cir.1979) ("the Fourth Amendment requires that the supporting affidavits set forth facts sufficient to allow a neutral magistrate to reasonably conclude that the property sought *is* located on the premises to be searched *at the time* the warrant issues") (emphasis added), *rev'd on other grounds,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *see also Sgro v. United States,* 287 U.S. 206, 208, 53 S.Ct. 138, 139, 77 L.Ed. 260 (1932) ("the proof [supporting probable cause] must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time").

The requirement of contemporaneous probable cause flows from the interests animating the Fourth Amendment. One of the principle evils which that provision prevents is vesting law enforcement officers with any discretion as to whether or not the conditions of the warrant have been complied with. This is precisely what anticipatory warrants permit in deviating from the contemporaneous probable cause standard.

It is well established that "[t]he security of one's privacy against arbitrary intrusion by the police—which is at the core of the Fourth Amendment—is basic to a free society." *Coolidge v. New Hampshire,* 403 U.S. 443, 453, 91 S.Ct. 2022, 2031, 29 L.Ed.2d 564 (1971) (quoting *Wolf v. Colorado,* 338 U.S. 25, 27, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782 (1949)).

Accordingly, the Fourth Amendment places very stringent limits on officers invading an individual's privacy. " 'The proceeding by search warrant is a drastic one,' and must by carefully circumscribed so as to prevent unauthorized invasions of 'the sanctity of a man's home and the privacies of life.' " *Berger v. New York*, 388 U.S. 41, 58, 87 S.Ct. 1873, 1883, 18 L.Ed.2d 1040 (1967).

The Fourth Amendment forbids general warrants to prevent law enforcement officers from rummaging through an individual's belongings at will. *E.g., Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976) (quoting *Coolidge*, 403 U.S. at 467, 91 S.Ct. at 2038). The requirement of a particular description " 'makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.' " *Id.* (quoting *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 511, 13 L.Ed.2d 431 (1965), itself quoting *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927)). Thus, a warrant authorizing a search for obscene publications was deficient because it "merely repeated the language of the statute and the complaints, specified no publications, and left to the individual judgment of each of the many police officers involved in the selection of such magazines as in his view constituted 'obscene . . . publications.' " *Marcus v. Search Warrant*, 367 U.S. 717, 732, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127 (1961).

Furthermore, the Fourth Amendment requires that the probable cause determination be made by a neutral and detached magistrate, rather than by the officers conducting the search. It has long been established that

the point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

*Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). Otherwise, the Fourth Amendment would be a "nullity" and homes would be "secure only in the discretion of police officers." *Id.* at 14, 68 S.Ct. at 369.

It is thus clear that the Fourth Amendment is concerned with insulating the citizenry from the whims of law enforcement officers. Plainly and simply, the use of anticipatory search warrants erodes this insulation. When an officer is given an anticipatory search warrant, the magistrate essentially instructs the officer as follows: When the following conditions occur, probable cause to conduct a search will arise. The officer is then left to determine unilaterally whether, when, and how the conditions occur which give rise to probable cause.

Law enforcement officers should not be the ones, absent exigent circumstances, that engage in the sensitive balancing required to weigh the merits of probable cause in a given case because they are not neutral parties to the determination of that crucial inquiry. The majority recognizes the need to limit the officers' discretion in executing an anticipatory warrant, but nonetheless foists upon the officers a determination that is quite sensitive in a constitutional sense. An anticipatory warrant can only be executed when four threads come together to form a coherent nexus: the criminal act, the evidence to be seized, the place to be searched, and the "temporal dimension." *Ante* at 13. The officers have virtually unfettered discretion to determine when this "temporal dimension" has been fulfilled, with no input from a neutral and detached judicial officer.

The majority also recognizes that "[w]hen issuing anticipatory warrants, magistrates must rely to a large extent on the expertise of federal agents as to the certainty that the triggering event will occur." *Ante* at 16. Because the majority finds that probability is the touchstone of probable cause, *ante* at 12, this fact demonstrates the great amount of discretion delegated to law enforcement officers in the anticipatory search warrant context. Law enforcement officers put together the probability that gives rise to probable cause, and then determine when the eventu-

ality occurs. In other words, the officers are in control of the entire warrant process, shaping the probable cause determination from start to finish. Such an unfettered and judicially uncontrolled intrusion into an individual's privacy interest is precisely what the Fourth Amendment was designed to prevent.

Incredibly, given the majority's resolution of the issue, no government interest weighed heavily in favor of the use of anticipatory search warrants. *See New Jersey v. TLO,* 469 U.S. 325, 337, 105 S.Ct. 733, 740, 83 L.Ed.2d 720 (1985) (balancing "the individual's legitimate expectations of privacy and personal security" with "the government need for effective methods to deal with breaches of public order" in passing on the validity of a class of searches).

An officer "engaged in the often competitive enterprise of ferreting out crime," *Johnson,* 333 U.S. at 14, 68 S.Ct. at 369, has two options in cases such as this one. Once the controlled delivery of contraband is complete, he may apply for a search warrant to the appropriate magistrate. Alternatively, if an exigency should arise in the course of the controlled delivery requiring immediate action, the officer is authorized to conduct a warrantless search pursuant to the well-known exigent circumstances exception to the warrant requirement. In short, there is no legitimate need for such a novel erosion of the Fourth Amendment as is promoted by anticipatory search warrants.

The majority's analogy to warrants for wiretapping, *ante* at 11 n. 3, is misapplied. When authorizing a wiretap, a magistrate must observe "precise and discriminate" procedures specific to wiretaps. *Katz v. United States,* 389 U.S. 347, 355, 88 S.Ct. 507, 513, 19 L.Ed.2d 576 (1967) (quoting *Berger,* 388 U.S. at 57, 87 S.Ct. at 1882). For example, the magistrate must identify the telephone number to be tapped and the conversations to be seized. *United States v. Donovan,* 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977). Probable cause must be fully in place *before* the wiretap is authorized. These safeguards ensure that " 'no greater invasion of privacy [is] permitted than [is] necessary under the circumstances.' " *Katz,* 389 U.S. at 355, 88

S.Ct. at 513 (quoting *Berger,* 388 U.S. at 57, 87 S.Ct. at 1882). They thus afford " 'similar protections to those . . . of conventional warrants.' " *Id.*

As discussed above, anticipatory search warrants, in addition to lacking the basic protections of conventional warrants, are simply unnecessary to any legitimate law enforcement need. Normal search warrants and the exigent circumstances exception adequately address whatever need may arise in a controlled delivery. As such, allowing the government to employ a new technique with which to invade an individual's privacy interest is completely unwarranted (no pun intended).