COMMONWEALTH vs. JOHN GAUTHIER.

No. 95-P-790.

Essex. April 8, 1996. - December 10, 1996.

Present: DREBEN, GILLERMAN, & GREENBERG, JJ.

*Search and Seizure,* Warrant, Affidavit. *Constitutional Law,* Search and
seizure.

In circumstances in which an anticipatory warrant did not state the trigger-
ing event nor make reference to the supporting affidavit containing such
language, in which the affidavit was not attached to the warrant or
served on the defendant and in which no mention of the affidavit was
made to the defendant before the search began, the warrant was void,
and, where the Commonwealth did not show that the search otherwise
was valid without a warrant, evidence seized in the search should have
been suppressed. [765-767] GREENBERG, J., concurring.

INDICTMENTS found and returned in the Superior Court
Department on May 19, 1993.

A pretrial motion to suppress evidence was heard by *Eliza-
beth B. Donovan,* J., and the cases were tried before *Thomas
E. Connolly,* J.

*Emmanuel N. Papanickolas* for the defendant.

*Susanne Levsen,* Assistant District Attorney, for the Com-
monwealth.

GILLERMAN, J. Because the underlying facts in this case
regarding an anticipatory warrant[1] appeared to be the same
as, or substantially similar to, the facts in *Commonwealth* v.
*Callahan, ante* 420 (1996), which was decided after the argu-
ment in this case, we invited an additional submission by
counsel regarding the effect of the decision in *Callahan* upon
this appeal by the defendant.

---

[1]The circumstances surrounding this appeal from the denial of the
defendant's suppression motion are set forth in the concurring opinion of
Justice Greenberg. The motion sought to suppress evidence seized in a
search which was executed pursuant to an anticipatory warrant.

The panel concludes that the warrant in this case was an anticipatory warrant and that, under the authority of *Callahan*, the evidence seized under the warrant must be suppressed.

In *Commonwealth* v. *Callahan, supra,* this court held that where the description of the triggering event[2] appears in the supporting affidavit for the warrant, but does not appear in the warrant itself (other than the printed form language appearing in the warrant[3]), and where the affidavit is neither attached to nor served with the warrant, and no mention of the affidavit is made to the defendant when the warrant is executed, the warrant is void and evidence seized in the ensuing search must be suppressed.

In this case, as in *Callahan*, the warrant neither states the triggering event language[4] nor makes reference to the affidavit (other than the printed form language), the supporting affidavit was not attached to the warrant or served on the defendant, and no mention of the affidavit was made to the defendant before the search began.[5] The warrant on its face was presumptively invalid, see *Callahan, supra,* and the Commonwealth had the burden to show the validity of the war-

---

[2]The occurrence of the "triggering events" provides the probable cause which, but for such events, would not be present. In this case, the triggering events were to provide the basis for the issuance of three warrants, see note 4, *infra,* but we are concerned here only with the warrant which authorized the search of the defendant's premises.

[3]The language appearing in the printed form is: "Proof by affidavit, which is hereby incorporated by reference, has been made this day and I find there is probable cause to believe (etc). . ."

[4]The affidavit filed in support of the application for the anticipatory warrant described the triggering event as follows: "The event activating the warrant will be . . . [a known drug dealer] arriving . . . [at the defendant's residence]. . . . As . . . [the drug dealer] exits . . . [the defendant's residence] a search of his person and/or any packages he is in possession of will be searched. Upon finding him in possession of marijuana, all three warrants would be immediately activated."

[5]The written return of the warrant, which describes in detail the events surrounding the warrant and its execution, was signed by Lieutenant John LeBrasseur, the officer in charge of the team which executed the search warrant. The return states that Lieutenant LeBrasseur, after his entry into the premises to be searched, entered the kitchen and was confronted by the defendant. The return continues: "At the kitchen table, I handed him a copy of the Warrant. He read it. I asked if he had anything he wanted to turn over to me." The report continues with the succeeding events of the search.

rant, or that the search was valid without the warrant. Compare *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 303 (1979) (searches "conducted outside the scope of valid warrants are presumed to be unreasonable. In such circumstances, the burden is on the Commonwealth to show that the search or seizure falls within a narrow class of permissible exceptions" to the warrant requirement). See also *Katz* v. *United States*, 389 U.S. 347, 357 (1967). The Commonwealth has failed to carry that burden.[6]

The motion to suppress should have been allowed. Accordingly, because the evidence remaining was insufficient to warrant the submission of the case to the jury, the judgments are reversed, the verdicts are set aside, and judgments shall enter for the defendant.

*So ordered.*

GREENBERG, J. (concurring). I agree that, under *Commonwealth* v. *Callahan, supra,* the warrant in this case was defective because it did not indicate on its face that it was an anticipatory warrant. However, I think the larger issue, briefed and argued by the parties, should be addressed because it raises a serious constitutional question. For that reason, a summary of the relevant facts, as found by the motion judge and amplified by the record, together with my separate analysis of additional issues follow.

*Facts.* During the week of October 25, 1992, Lieutenant John LeBrasseur, an experienced narcotics investigator, received information from a Massachusetts State police sergeant that Glen Janice was "dealing marijuana . . . from his business, AC Auto Supply" and that Janice would often "leave his business to pick up his product prior to deals being made with his customers." He used a white Chevrolet Camaro or Pontiac Trans Am automobile to transport the contraband.

---

[6]The Commonwealth's original brief treats the warrant as if it is not an anticipatory warrant, arguing that probable cause existed for the issuance of a conventional search warrant for the defendant's residence. We reject this argument. See notes 2 and 4, *supra*. Moreover, the evidence in the case, which we have reviewed, does not support the argument. In its supplemental submission, the Commonwealth relies on *Commonwealth* v. *Villella*, 39 Mass. App. Ct. 426 (1995). *Villella* is inapposite, for there the affidavit accompanied the search warrant. See *id.* at 428.

Four days later, at 5 P.M., surveillance was established at AC Auto Supply. At 6:30 P.M., Janice was seen driving a white Trans Am to the defendant's residence at 21 Range Avenue in Lynn, enter the building, come out fifteen minutes later, and then drive to his own home. The defendant was known to Lieutenant LeBrasseur, and his home had been searched in 1983, at which time marihuana, cocaine, articles for packaging cocaine, a handgun, and $28,659 in United States currency were found. The evidence from that 1983 search was, however, ultimately suppressed based on a finding that the search was unlawful.

On November 2, 1992, a confidential informant also told Lieutenant LeBrasseur of Janice's marihuana dealings and was sent to AC Auto Supply to make a controlled purchase of one-quarter pound of marihuana. Upon completion of the transaction, the informant reported to Lieutenant LeBrasseur that Janice had shown him a desk that contained baggies and marihuana seeds, indicating that Janice had been packaging marihuana there. The motion judge found that the informant had left Janice's shop carrying a "brown paper bag."

Two days later, the same informant was sent to make a second controlled purchase from Janice at AC Auto Supply. This time the informant was instructed to buy one and one-quarter pounds of marihuana. The informant indicated this "would be no problem, but Janice would probably have to leave to get the marijuana." On the contrary, it turned out that Janice had more than enough to fill the order, and all of it was placed in a brown paper bag. Janice, however, did tell the informant that he intended to replenish his supply when he closed shop that day at 6 P.M. Just before 6 P.M., a woman driving the same white Trans Am that Janice had driven on the previous occasion appeared on the scene. Janice got in the car, and both of them drove to Janice's residence. The woman got out of the car, and Janice then drove alone to the defendant's place at 21 Range Avenue, Lynn, where he entered through the side door of the house. At 6:15 P.M., Janice came out with a brown paper bag and drove home.

Based on his observations and experience, Lieutenant LeBrasseur thought that the defendant's home was being used as a "source house," where large quantities of cash and drugs are stored for use by individual dealers. According to him, source houses are commonly maintained to ensure that indi-

vidual dealers do not tie up large sums of currency or risk arrest while in possession of large quantities of drugs.

As a result of the information and intelligence gathered, and in anticipation of events that the police had already planned, Lieutenant LeBrasseur requested search warrants for three locations: the defendant's home, Janice's home, and Janice's place of business. While the affidavit in support of the application for the search warrant indicated the "officer requests an[] Anticipatory Search Warrant," the warrant issued for the search of the defendant's residence did not indicate on the form or in the typed-in information that it was an anticipatory warrant. Further, the event that was supposed to trigger the execution of the warrants is apparent only from Lieutenant LeBrasseur's affidavit:

> "25. Within the next 72 hours, this officer intends to have [the confidential informant] 'CI' call Janice at his business. At that time 'CI' will place an[] order for five (5) pounds of marijuana with Janice.

> "26. This officer requests an[] Anticipatory Search Warrant. The event activating the warrant will be Janice arriving at 21 Range Avenue, Lynn, MA, after the order is placed. As Janice exits 21 Range Avenue, Lynn, MA, a search of his person and/or any packages he is in possession of will be searched. Upon finding him in possession of marijuana, all three warrants would be immediately activated."

To sum up, as of November 6, 1992, the police had secured a warrant and were ready to put the final parts of their plan into action. This plan involved having the confidential informant place a third order of marihuana with Janice. Janice, in turn, would be prompted to go to the defendant's residence to obtain a sufficient quantity of contraband to meet the order. As Janice exited the defendant's residence with the contraband, he would be intercepted, thus tying the defendant to the distribution scheme.[1]

Unfortunately for the police, and according to Lieutenant

---

[1]As indicated in note 6, *supra*, of the majority opinion, the Commonwealth in its brief treats the warrant in this case as if it is not an anticipatory search warrant, arguing that probable cause existed for the is-

LeBrasseur's testimony at the motion hearing, not everything went according to plan. There was no problem arranging the purchase: at 6:15 P.M. on November 6, 1992, Janice agreed to sell five pounds of marihuana to the same informant, with the sale to be made at Janice's residence about an hour later. Lieutenant LeBrasseur and other officers set up surveillance at AC Auto Supply. At 6:30 P.M., with LeBrasseur following,

---

suance of a conventional search warrant for the defendant's residence. I do not disagree with the conclusion of the majority on this issue. As it was also the basis for the motion judge's decision, I think more than a summary treatment of the argument is called for.

According to the Commonwealth, "Once the informant was established as credible following the controlled buy, his statement that Janice was going to his supplier could be relied on. Further surveillance of Janice strengthened the inference that the defendant was Janice's supplier when Janice drove to the defendant's house and stayed a few minutes, exiting with the same type of paper bag in which the informant received drugs from Janice. The fact that the defendant did not personally observe the drugs leaving the hands of the defendant was not fatal to the application."

While the prior controlled buys executed by the informant did inculpate Janice, they did little to bring the defendant into the web. The informant had no knowledge of the identity of the defendant. According to the affidavit in support of the application for the warrant, the closest the informant got to the defendant was when Janice told the informant that "he, Janice, had to bring the money [received from the informant in the controlled buy of one and one-quarter pounds of marihuana on November 4, 1992] to his supplier and replenish what he, Janice, had just sold to [the informant]." The supplier's name was not provided. This is in contrast to the cases cited by the Commonwealth. In *Commonwealth* v. *Tshudy,* 34 Mass. App. Ct. 955 (1993), the informant provided the police with the defendant's name, and the informant knew the defendant was the source for the subordinate dealer. *Id.* at 955-956. Similarly, in *Commonwealth* v. *Peguero,* 26 Mass. App. Ct. 912 (1988), the informant had personally observed the drug paraphernalia in the defendant's apartment and had overheard the defendant offering drugs for sale to third parties. *Id.* at 913. Here, the only facts connecting the defendant to drug activity were the surveilled brief visits from Janice and the stale, illegally obtained evidence from a search of the defendant's residence in 1983. Moreover, the police themselves appear to have also concluded that at the time of the application for the warrant there was not yet probable cause to search the defendant's residence; as the affidavit in support of the application for the search warrant indicates, they sought to add to the showing that the defendant was Janice's source by searching Janice, whose supply had been depleted, as he left the defendant's house. While flawed in several respects, the warrant to search the defendant's residence was an anticipatory warrant.

Janice and a woman left AC Auto Supply with Janice carrying a white plastic bag. The woman drove the white Trans Am to Janice's residence where she left the car and went into the house. Janice then drove to the defendant's home and entered the house. He was not carrying anything when he went inside.

When Janice reemerged from the house, events began to stray from the course anticipated by Lieutenant LeBrasseur's affidavit. Janice did not come out of the side door of the house as expected, but from somewhere in the rear of the house. That change had two consequences. First, Janice did not pass beneath the light on the side of the house, and so Lieutenant LeBrasseur was afforded little opportunity to observe, in the dark, whether he was carrying anything. Second, and more importantly, by the time Janice became visible to the police officers, an arrest was impossible to effectuate on the premises; Janice was in the car and driving away before the police could reach him.

Lieutenant LeBrasseur testified that he observed Janice walk around from behind his car, open the driver's door of the car, place "something" or "an object" behind the driver's seat, get in the car and drive away. LeBrasseur and fellow officers followed Janice until their first opportunity to stop him safely — at a traffic light about one and one-half miles from the defendant's home. Janice's car was searched, and a bag containing marihuana was found behind the driver's seat. It was at this point that the three search warrants, including the one for the defendant's residence, were executed.

*Analysis.* Police have been encouraged to obtain anticipatory search warrants in situations where a police officer would otherwise be "put[] . . . to a choice between undertaking an immediate unwarranted search or taking the time to obtain a warrant and risking the destruction or concealment of potential evidence." *Commonwealth* v. *Soares*, 384 Mass. 149, 154 (1981). That probable cause did not exist prior to the time the warrant was issued points to a conclusion that this was an "entirely anticipatory" warrant, see 2 LaFave, Search and Seizure § 3.7(c), at 370 (3d ed. 1996). Further, as indicated, this is a case in which "future events w[ould] also

have to establish even the existence of criminality." *Id.* at 367.[2]

What the police did was set in motion a chain of events; the police planned to use the information from those events for further corroboration to justify the search. First, the issuing magistrate was asked to assume that, after the informant placed the order for five pounds of marihuana, Janice would soon thereafter drive to the defendant's home.[3] Second, Janice was required to enter and leave the defendant's home, and, third, be arrested and searched just as he exited the defendant's premises, with marihuana found in his possession.

In the application for an anticipatory warrant, the affiant must outline with reasonable precision the anticipated "triggering event." The test of the validity of the anticipatory warrant is whether the warrant "restrict[s] the officers' discretion in detecting the occurrence of the [triggering] event to almost ministerial proportions, similar to a search party's discretion in locating the place to be searched." *United States* v. *Ricciardelli*, 998 F.2d 8, 12 (1st Cir. 1993). For example, our cases have recognized that the test can be satisfied where the triggering event is a controlled buy at the defendant's premises. *Commonwealth* v. *Pichardo*, 38 Mass. App. Ct. 416, 417 (1995). *Commonwealth* v. *Villella*, 39 Mass. App. Ct. 426, 427-428 (1995). Typically, anticipatory search warrants relate to contraband in transit, where a particular item is known to be en route to a specific person, often at a specified location, and the warrant is issued in anticipation of the item being received.[4] See, e.g., *Commonwealth* v. *Weeks*, 13 Mass. App. Ct. 194 (1982). The conditions upon which anticipatory

[2]The probable cause doctrine only requires that evidence of crime can likely be found at the described locus *at the time of the search.* See *United States* v. *Ricciardelli*, 998 F.2d 8, 10 (1st Cir. 1993).

[3]I note that this event was not controlled by either the police or any of their agents. Contrast *Commonwealth* v. *Villella*, 39 Mass. App. Ct. 426, 427 (1995) (buyer was confidential informant's intermediary through whom he would "buy marijuana from the defendant at his residence").

[4]"[B]y far the most common case has to do with the anticipated mail delivery to a certain address of a package known or reasonably believed to contain some form of contraband. The most typical situation arises when customs agents, upon inspection of international mail coming into the United States, determine that there are drugs concealed in a particular piece of mail. When this information is turned over to federal or local law enforcement authorities, they will likely determine from cooperating officials in the postal service the approximate time at which a delivery of the

warrants become effective must be " 'explicit, clear, and narrowly drawn.' " *United States* v. *Gendron,* 18 F.3d 955, 965 (1st Cir.), cert. denied, 513 U.S. 1051 (1994), quoting from *United States* v. *Ricciardelli, supra* at 12. If the officers had discretion, then the terms of the search warrant do not pass constitutional muster. There is no room for ambiguity in making the determination whether the triggering event has occurred.

There is in this case some troubling ambiguity as to what constitutes the triggering event due to the language used in paragraph 26 of the affidavit: "The event *activating* the warrant will be Janice arriving at 21 Range Avenue, Lynn, MA, after the order is placed. As Janice exits 21 Range Avenue, Lynn, MA, a search of his person and/or any package he is in possession of will be searched. Upon finding him in possession of marijuana, all three warrants would be immediately *activated.*" (Emphasis supplied.) Thus, the affidavit could be invalid given that it could be read to describe two "activating" events.

Even if it were clear that the plan was to execute the warrant for the defendant's residence only after Janice was searched upon leaving the defendant's residence,[5] there is another problem: rather than arresting and searching Janice at the 21 Range Avenue premises — "[a]s Janice exit[ed] 21 Range Avenue," the officers were forced to follow his car for a mile and one-half before stopping him. Upon arrest they searched his vehicle rather than "his person." It follows that the triggering event described in the application for the warrant did not occur. The hallmark of an anticipatory search warrant is that unless the triggering event actually happens the warrant is void. *United States* v. *Garcia,* 882 F.2d 699,

---

offending piece of mail will be made. This information, together with the facts concerning the discovery of the contraband and other relevant matters, is then set out in an affidavit upon which a search warrant is thereafter issued. The warrant is obtained in advance of the anticipated time of delivery so that it may be promptly executed when the delivery is made. Ordinarily, execution occurs after the police determine, either by being informed by postal authorities or through surveillance of the premises in question, that the predicted delivery has actually occurred" (footnotes omitted). 2 LaFave, *supra* at 362-363.

[5] In its brief, the Commonwealth indicates that this was the activating or triggering event: "As [Janice] exited the house, he would be searched, and upon finding marijuana, all three warrants would be activated."

702 (2d Cir.), cert. denied sub nom. *Grant* v. *United States*, 493 U.S. 943 (1989). *United States* v. *Rey*, 923 F.2d 1217, 1221 (6th Cir. 1991). See also *Commonwealth* v. *Villella*, 39 Mass. App. Ct. at 428 n.1 (motion judge specifically indicated in his findings that the conditions for the warrant's execution were satisfied). "If a search warrant is purely an anticipatory search warrant, then quite clearly if the critical future event never occurs the warrant may not be executed." 2 LaFave, Search and Seizure § 3.7(c), at 370. It appears then that, once the officers did not arrest and search Janice on the premises as anticipated, the warrant became a nullity. I agree with the majority that the Commonwealth has not shown that a warrantless search of the defendant's home was justified. Thus, for several reasons, the motion to suppress should have been allowed.