COMMONWEALTH vs. VINCENT P. FAZIO
(and six companion cases).

Suffolk. November 7, 1977. — June 20, 1978.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Practice Criminal*, Opening statement by prosecutor, Charge to jury,
Witness, Conduct of prosecutor. *Witness*, Self-incrimination.

Despite the fact that an attorney for a witness in a criminal case advised
the judge at a hearing prior to trial that the witness intended to invoke
his Fifth Amendment privilege against self-incrimination as to the
events in question, the judge did not err in permitting the prosecutor to
refer in his opening statement to the evidence he expected to introduce
through the witness. [453-457]

The judge's instructions to the jury at a criminal trial on the limited pur-
pose and effect of the prosecutor's opening statement were sufficient to
remedy any possible prejudice from the prosecutor's reference to
evidence expected from a witness who failed to testify. [457-458]

A judge's decision to allow a prosecutor at a criminal trial to call the al-
leged victim as a witness after he had been held in contempt for refus-
ing to answer questions during a voir dire hearing did not constitute
reversible error where there was no improper purpose on the part of
the prosecutor and where the defendants were not prejudiced by the
prosecutor's action. [458-462]

INDICTMENTS found and returned in the Superior Court
on December 5, 1975.

The cases were tried before *McGuire*, J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Albert L. Hutton, Jr.* (*Ralph F. Champa, Jr.*, with him)
for the defendants.

*Thomas E. Dwyer, Jr.*, Special Assistant District At-
torney, for the Commonwealth.

LIACOS, J. Three defendants were tried in the Suffolk
Superior Court on indictments charging each with kidnap-

ping, with intent to extort money (G. L. c. 265, § 26), making threats with intent to extort money (G. L. c. 265, § 25), assault and battery to collect a loan (G. L. c. 265, § 13C), and assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A). Defendant Charles L. Costa was also charged with knowingly transporting illegal alcoholic beverages (G. L. c. 138, § 22). On the defendants' motions at the close of the Commonwealth's case, the trial judge directed verdicts of not guilty as to so much of the kidnapping indictments as charged extortion, on the indictments charging threats to extort, and on the indictments charging assault and battery to collect a loan. The jury found the defendants guilty of kidnapping and assault and battery with a dangerous weapon. Additionally, Costa was found guilty of illegal transportation of alcoholic beverages. The defendants claimed an appeal pursuant to G. L. c. 278, §§ 33A-33G. We allowed the defendants' application for direct appellate review.

The defendants claim three grounds on which they believe reversal of their convictions is required. First, they argue that the prosecutor was guilty of prejudicial misconduct by including in his opening statement a summary of the testimony that he expected to elicit from the alleged victim. The basis for this allegation of misconduct is the fact that the alleged victim had, through his counsel, announced in court prior to the prosecutor's opening statement that he would invoke the constitutional privilege not to incriminate himself and consequently would refuse to testify. Second, the defendants argue that the judge failed adequately to instruct the jury so as to protect the defendants from the prejudicial effect of the prosecutor's opening statement. Third, the defendants assert that the prosecutor's action in calling the alleged victim to the stand and compelling him to claim the privilege in the presence of the jury was prejudicial and grounds for reversal.

We find no error, and thus affirm the judgments of the Superior Court.

1. *The prosecutor's opening statement.* The alleged victim, and prospectively the Commonwealth's chief witness, was one Owen J. Roberts, III. Roberts had been in the protective custody of the district attorney's office from the time of his appearance before the grand jury on December 3, 1975, until April 20, 1976, when he was ordered held on $100,000 bail with double surety as a material witness. During that period he apparently had been fully cooperative with law enforcement officials. On April 21, at a hearing on a motion by Roberts's counsel to reduce bail, Roberts's counsel informed the judge, the prosecutor, and the defense attorneys that his client had decided to "invoke his privilege against self-incrimination as to any events which are alleged to have occurred on November 30, [1975,] which forms the crux of this case." The prosecutor indicated to the judge that, until that moment, he had believed Roberts "fully intended to cooperate and testify in this case."

On the first day of the trial, April 26, immediately after the jury had been empanelled, the judge held a hearing out of the presence of the jury. The purpose of the hearing, requested by the attorneys for the defendants, was to inquire (a) whether the prosecutor intended to refer in his opening statement to testimony expected to be elicited from Roberts, and (b) the effect that should be given to the announcement by Roberts's counsel that his client would invoke the Fifth Amendment to the United States Constitution. The following information was presented to the judge during the course of that hearing. First, the prosecutor stated that he would tell the jury that they would hear certain testimony tending to establish the guilt of the defendants. The content of that expected testimony would in fact be based to a significant degree on the testimony of Roberts before the grand jury, although the jury would not be told that Roberts was the prospective witness, nor told how the prosecutor knew what that witness would testify. Second, counsel for the defendants brought to the attention of the judge Roberts's stated intention to invoke the Fifth Amendment with regard to the events on the night in question. Third, counsel for the

defendants argued that to allow the prosecutor to describe Roberts's expected testimony would allow prejudicial information to reach the jury. They argued that this would create the impression that Roberts had been threatened and was afraid to testify, an impression that would be strengthened when Roberts actually took the stand and invoked his Fifth Amendment privilege.

After hearing the argument of counsel, the judge refused to grant a motion by the defendants that the prosecutor be ordered not to refer in his opening to the testimony he hoped to elicit from Roberts. The judge did instruct the prosecutor generally that he could include in his opening only such facts as he could "reasonably anticipate" would be admitted in evidence. Counsel for the defendants took exception to the judge's refusal to grant their motion.

The issue raised by the preceding facts is before us on two assignments of error. One assignment of error cites the judge's actions in allowing the prosecutor to refer in his opening statement to the evidence he expected to introduce through Roberts's testimony (although he did not identify the testimony as coming from Roberts either by name or as the alleged victim). The other assignment claims error in the judge's denial of the defendants' motion for mistrial, made after the defendants rested, based on the prejudicial impact of the prosecutor's reference during his opening to facts that were never proved during trial.

"The proper function of an opening is to outline in a general way the nature of the case which the counsel expects to be able to prove or support by evidence." *Posell* v. *Herscovitz*, 237 Mass. 513, 514 (1921). The prosecutor in a criminal action in general may state in his opening anything that he expects to be able to prove by evidence. *Commonwealth* v. *Martin*, 372 Mass. 412, 419 (1977). *Commonwealth* v. *Hartford*, 346 Mass. 482, 486 (1963). *Commonwealth* v. *Makarewicz*, 333 Mass. 575, 583 (1956). Although the expected testimony or other evidence that the prosecutor alluded to in his opening may not materialize during trial, it will not be presumed that the prosecutor acted in bad faith.

*Commonwealth* v. *Hartford, supra* at 486. Compare S.J.C. Rule 3:22, DR 7-106 (C) (1), 359 Mass. 796, 821 (1972) (a lawyer shall not "allude to any matter that he has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence"); cf. Proposed S.J.C. Rule 3:22A (1975) (Prosecutorial Function) (it is unprofessional conduct for prosecutor to allude to evidence in his opening unless there is "reasonable basis . . . in good faith" that evidence will be admitted).

The defendants emphasize language in one of our cases that they interpret as establishing a much narrower view of the permissible scope and content of a prosecutor's opening statement. In *Commonwealth* v *Bearse*, 358 Mass. 481, 487 (1970), we said that a statement should not have been made in the prosecutor's opening unless there was "no doubt of its admissibility." The special circumstances of that case limit the reach of the quoted language. We noted in *Bearse* that the prosecutor's statement was, in the circumstances, "irretrievably and fatally prejudicial to the defendant." The ambiguous testimony which was characterized as the "core" of the Commonwealth's case in *Bearse* was, by force of the prosecutor's opening statement, transformed from the possible meaning "Don't sell it, Dad" to "Don't shoot me, Dad." In contrast, the instant case does not present a situation where the force of the prosecutor's opening remarks was overwhelmingly prejudicial and likely to leave an indelible imprint on the jurors' minds. The essence of much of the expected testimony, as referred to in the prosecutor's opening, was introduced at trial through the eyewitness testimony of the arresting police officers. The prosecutor was not, however, able to introduce independent evidence of the existence of a loan from the defendants to Roberts — a fact which the prosecutor told the jury in his opening that he expected to establish through testimony. Nonetheless, there was no resulting prejudice to the defendants for the reason that the judge granted motions for directed verdicts on all those charges involving a loan transaction or an intent to extort money.

Moreover, the failure of the prosecutor to prove the existence of a loan transaction or extortion, and the resulting action of the judge in directing verdicts on the related charges, may well have undercut the jury's confidence in the prosecutor thereby benefiting, rather than prejudicing, the defendants. We think that the special circumstances of the *Bearse* case do not apply to the facts before us and that the usual standard, recently reiterated in *Commonwealth* v. *Martin, supra*, is applicable. The prosecutor properly could have referred in his opening to anything that he expected to be able to prove by evidence. This expectation must, of course, have been reasonable and grounded in good faith. See *Gladden* v. *Frazier*, 388 F.2d 777 (9th Cir. 1968).

Applying this standard, we cannot say that the prosecutor acted improperly in alluding to the substance of Roberts's hoped for testimony even though Roberts's counsel had repeatedly asserted that his client would invoke his Fifth Amendment privilege. As the judge correctly observed during the course of the hearing on the opening statement: "A person can't refuse to testify simply because he doesn't care to testify." See *Commonwealth* v. *Johnson*, 365 Mass. 534, 543-544 (1974). At the time of that hearing, Roberts had not been subjected to a voir dire and had not refused to testify before the jury. The validity of his claim of privilege had not been determined, and he had not yet been held in contempt for refusing to testify. Roberts had testified before the grand jury as to the events in question and generally had been cooperative during the months before the trial. The prosecutor was not obliged to guess at the time of his opening as to whether this previously cooperative individual would claim his Fifth Amendment privilege at trial, whether the claim ultimately would be upheld, and whether Roberts would choose to suffer contempt rather than testify if the claim were not upheld. See *Namet* v. *United States*, 373 U.S. 179, 188 (1963). The judge, in ruling against the defendant's motions to limit the prosecutor's opening statement, demonstrated his awareness of these principles. "I am not going to act on what an expectation is. If a person wishes to take the

Fifth Amendment, or expresses any reluctance to testify, then I will hear that out of the presence of the jury." There was no showing during the hearing prior to the prosecutor's opening that Roberts's claim of privilege was valid or that he would refuse to testify at the trial under penalty of contempt. The only information presented to the judge at that time was the assertion of Roberts's counsel that his client intended to seek the protection of the Fifth Amendment. There was thus no error in permitting the prosecutor to proceed as he did. See *Commonwealth* v. *DiPietro*, 373 Mass. 369, 389-390 (1977); *Commonwealth* v. *Martino*, 361 Mass. 720, 721-722 (1972).

2. *The judge's instructions.* The defendants argue that the judge was under a duty, which he failed to fulfil, to instruct the jury sua sponte in such a manner as to protect the defendants from the prejudicial effects of the prosecutor's opening statement.[1] Much of the force of this argument is dispelled by our conclusion that the prosecutor's opening remarks were not improper. Moreover, the judge adequately instructed the jury on the limited purpose and effect of the opening. At the beginning of the prosecutor's opening, the judge stated that "the Commonwealth's opening is not evidence, but it is simply an outline of what may be offered in evidence." The prosecutor repeated this caution during

---

[1] We discuss the defendants' contentions as to the adequacy of the judge's instructions despite the lack of any assignment of error addressed specifically to the judge's actions in this regard. The general import of the defendants' arguments fairly may be said to be encompassed in the assignment of error grounded on the denial of the defendants' motions for mistrial. Those motions, made after the defendants rested, were based on the alleged prejudicial impact of the prosecutor's reference during his opening to facts that were never proved during trial. In view of the judge's conscientious effort to place the opening remarks in their proper perspective, see text, *infra*, we do not believe that the judge abused his discretion in denying the motions for mistrial. See *Commonwealth* v. *Gouveia*, 371 Mass. 566, 572 (1976) ("Denial of a mistrial and reliance on curative instructions may be proper, in the judge's discretion, even in a case of clearly improper argument by a prosecutor"); *Commonwealth* v. *Barnett*, 371 Mass. 87, 96 (1976), cert. denied, 429 U.S. 1049 (1977) ("Whether to grant a mistrial is largely a discretionary matter").

his remarks. The judge repeated it after the opening. At the conclusion of the trial, the judge again referred to the function of the opening in his charge to the jury. He charged that "the Commonwealth, through its lawyer, a district attorney, makes what is called an opening. That is not evidence. That is merely an expression of what, at the time it is made, the district attorney feels and intends to offer as evidence. It is not to be considered by you as evidence, and if indeed statements are made of anticipated proof, and then that anticipated proof does not materialize for any one of several reasons perhaps, then you will not consider adversely to the defendants anything that the district attorney has said in his outline of anticipated proof."

Based on our review of the transcript, we see no basis for faulting the judge on his handling of the possibly prejudicial impact on the jury of the prosecutor's opening statement. His repeated instructions regarding the limited purpose and effect of the opening were timely, clear, and forceful. We do not think that this is a case in which the judge's instructions are inherently insufficient to remedy the prejudice of improper remarks or inadmissible evidence brought to the attention of the jury. See *Commonwealth* v. *Walker*, 370 Mass. 548, 570, cert. denied 429 U.S. 943 (1976). Generally, "it cannot be assumed that jurors will ignore strong instructions to disregard certain matters." *Id.*, quoting *Commonwealth* v. *Stone*, 366 Mass. 506, 513 (1974).

3. *Calling the witness.* After the prosecutor's opening statement and just before the Commmonwealth was to call Roberts as its first witness, the prosecutor requested a voir dire. The prosecutor told the judge that he felt "compelled to request this voir dire in view of the representations made that this witness [Roberts] will in fact invoke the Fifth Amendment." The defense attorneys joined in the request. The prosecutor called Roberts to the stand, outside the presence of the jury, and asked him several questions. Roberts was asked, among other things, whether he was in Boston in the early morning hours of November 30, 1975 (the date of the crimes alleged in the indictments), and

whether he was in Boston on the evening of November 29. On the advice of counsel, Roberts refused to answer both questions on the ground that the answers might incriminate him. He continued to refuse after being ordered by the judge to answer. The judge then adjourned the voir dire hearing until the next day so as to allow counsel an opportunity to seek appellate review or submit memoranda of law. When the hearing resumed the next day, Roberts was asked the same two questions and again refused to answer on Fifth Amendment grounds. The judge ruled that the answers could not tend to incriminate Roberts and that the Fifth Amendment privilege was inapplicable. Roberts was then adjudged in contempt.

Notwithstanding the results of the voir dire interrogation of Roberts, the prosecutor determined that he would call Roberts to testify before the jury as the Commonwealth's first witness. This decision was made despite the strenuous objections of defense counsel. The judge ruled that Roberts could be called, to which the defendants properly took exception. The prosecutor's position was that he had "a right and a duty" to call Roberts, at least to the extent that the inquiry was limited to the two questions as to which the judge had already ruled the Fifth Amendment to be inapplicable. Roberts was called to the stand by the prosecutor, asked the same two questions, and ordered to answer by the judge. After invoking the Fifth Amendment, the witness was excused. The judge then instructed the jury that Roberts's refusal to answer the two questions could not be considered against the defendants, that the refusal and the judge's orders to answer were not evidence, and that no inferences adverse to the defendants were to be drawn from the exchange.

The defendants assign as error the judge's decision to allow the prosecutor to call Roberts as a witness after he had been held in contempt during the voir dire hearing.[2] Our

---

[2] The defendants also contend that it was error to order Roberts to answer the questions. We do not think that the validity or invalidity of

recent decision in *Commonwealth* v. *Martin*, 372 Mass. 412 (1977) is instructive with regard to this issue. In *Martin*, a witness had indicated an unwillingness to testify because of fear of prosecution and uncertainty as to the extent and effect of promises of immunity. We held that the prosecutor acted properly in undertaking to question the witness because, in light of the uncertainty regarding the witness's position, the prosecutor need not assume that the witness would balk. *Id.* at 420-421. We said in a footnote, however: If it had been clear that the witness would not give substantive testimony, he should not have been recalled. . . . It is suggested, indeed, that where there is doubt what the witness will do, it is sound practice to put the substantive questions to him under oath in the absence of the jury in order to determine whether he should be recalled before the jury and how he should then be interrogated." (Citations omitted.) *Id.* at 421 n.17. This language reflects our determination that it is improper for a prosecutor to call a witness before the jury for the sole purpose of prejudicing the defendant by eliciting a witness's claim of Fifth Amendment privilege.[3]

Roberts's Fifth Amendment claim in any way affects the defendants' claim of error. We therefore do not discuss this issue. Cf. *Commonwealth* v. *Turner*, 371 Mass. 803, 810 (1977) (grand jury testimony as waiver of privilege); *Taylor* v. *Commonwealth*, 369 Mass. 183, 189-191 (1975) (prior testimony as waiver of privilege).

[3] "When a witness in a criminal case refuses to answer questions on the ground of self-incrimination, lay triers may readily, although improperly, make invidious inferences associating the witness with the defendant in an illegal enterprise; and the prejudice to the defendant may be especially hard to remove because he cannot cross-examine the witness as to 'testimony' which is in the form of a kind of riddling silence" (footnotes omitted). *Commonwealth* v. *Martin, supra* at 413-414. We note that the claim of the witness, Roberts, of the privilege against self-incrimination would be most unlikely to create an "invidious inference" of association with the defendant in an illegal enterprise as might have been an issue in *Martin*. The witness, Roberts, was the alleged victim; the witness in *Martin* was a coparticipant who had pleaded guilty earlier. The defendants cite *Commonwealth* v. *DuVal*, 453 Pa. 205 (1973), which is inapposite for similar reasons. In *DuVal*, the witnesses called, unlike the witness in this case, could, as in *Martin*, be viewed as accomplices. The Supreme

The record in this case shows no improper purpose on the part of the prosecutor. The recalcitrant witness was the alleged victim, not an accomplice or alleged coparticipant in the crime, nor was there any indication of association with the defendants in other possibly illegal ventures. Also, a ruling that the privilege was improperly claimed had been made. The prosecutor was entitled to make an effort to gain the witness's testimony in this circumstance.

Once Roberts was called to the stand the "questioning was not insistent or extended, nor did it suggest particularized states of fact from which the jury might the more easily draw harmful inferences." *Commonwealth* v. *Martin, supra* at 421. The two questions put to Roberts before the jury were not "fact laden." To the contrary, they were so innocuous on the surface as to lead the judge to conclude that their answers could not possibly tend to incriminate Roberts.

We do not believe that the defendants were prejudiced by the prosecutor's action. This conclusion is based on the brevity of the questioning, the harmlessness of the questions, and the promptness and forcefulness of the judge's instructions. Cf. *Frazier* v. *Cupp*, 394 U.S. 731, 733-735 (1969). Another significant factor is that much of the testimony that the prosecutor alluded to in his opening was supplied during the trial by the arresting police officers, thus reducing the importance of Roberts as a witness and blunting the impact of his refusal to testify.

The impression made on the jurors by Roberts's invocation of the Fifth Amendment did not add the "critical weight" that brought about the verdicts of guilty. *Commonwealth* v. *Martin, supra* at 413-414, and cases cited. Nor do

---

Court of Pennsylvania found error in calling such witnesses with prior knowledge they would claim the privilege. The court explained its reasons as follows: "Where it is the prosecutor who attempts to use such a device, there is a special vice: the inference to be drawn from the refusal to testify of the defendant's co-defendant, accomplice or associate has *no probative value whatsoever* in establishing the guilt of the defendant. It is rather an effort to cause the jury to think 'guilt by association.'" 453 Pa. at 213-214.

we think that the action of the prosecutor satisfied the *Martin* formulation of professional misconduct of the type that might justify reversal — that is, the "questioning of a material witness in order to provoke a claim of privilege with a deliberate design to raise those improper inferences in the minds of the jury." *Id.* at 414. There apparently was no clear precedent at the time that would have revealed to the prosecutor whether the potential prejudice to the defendants of a contemptuous claim of Fifth Amendment privilege outweighed the value of determining whether the witness would actually invoke the privilege and refuse to testify before the jury. The prosecutor believed in good faith that the balance favored the calling of the witness before the jury. In the circumstances, his judgment cannot be equated with a deliberate design to raise improper inferences.

4. Finding no error sufficient to require reversal, we affirm the judgments of the Superior Court.

*Judgments affirmed.*