## COMMONWEALTH *vs.* JOHN K. STAINES.

Middlesex. March 1, 2004. - April 22, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Constitutional Law,* Search and seizure, Probable cause, Assistance of counsel. *Search and Seizure,* Affidavit, Probable cause, Warrant. *Probable Cause. Practice, Criminal,* Assistance of counsel, Disclosure of evidence, Argument by prosecutor, Comment by prosecutor, Instructions to jury, Lesser included offense.

A Superior Court judge properly denied a criminal defendant's pretrial motion to suppress evidence of cash and several bags of cocaine yielded from a police search of the defendant's automobile pursuant to an anticipatory search warrant, where the affidavit supporting the warrant established probable cause that the vehicle would contain cocaine at the time of the search [522-529], and where the scope of the warrant was not limited to cocaine that the police had already seized during a controlled buy just prior to the defendant's arrest and the seizure of his vehicle [529].

A Superior Court judge properly denied a defendant's motion for a new trial of an indictment for drug trafficking, where the defendant did not establish that his counsel provided constitutionally ineffective assistance, either by not obtaining and making use of newly discovered evidence, which was not in fact newly discovered or material to the main issue in the case [529-534], or by not requesting a lesser included offense instruction, where none was warranted [537-538]; and where no substantial risk of a miscarriage of justice was created by remarks the prosecutor made in the opening statement that referred to anticipated evidence or by assertions in the prosecutor's closing argument that were supported by the evidence [534-537].

INDICTMENT found and returned in the Superior Court Department on December 18, 1996.

A pretrial motion to suppress evidence was heard by *Herman J. Smith, Jr.,* J.; the case was tried before *Raymond J. Brassard,* J., and a motion for a new trial, filed on June 27, 2002, was heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Charles W. Rankin* for the defendant.

*Jessica Langsam*, Assistant District Attorney, for the Commonwealth.

COWIN, J. In connection with his indictment charging trafficking in cocaine over twenty-eight grams, the defendant filed a motion to suppress the cocaine and cash found in a search of his automobile. The motion was denied and the defendant was convicted by a Superior Court jury.[1] He filed a timely notice of appeal. The Appeals Court allowed the defendant's motion to stay appellate proceedings so that he could pursue a motion for a new trial in the Superior Court. After the trial judge heard and denied the motion for a new trial, the Appeals Court ordered that the appeal from the denial of that motion be heard with the defendant's direct appeal. We transferred the case to this court on our own motion. The primary issues in this case involve questions concerning the issuance and execution of an anticipatory search warrant. We conclude that both the motion to suppress and the motion for a new trial were properly denied and affirm the defendant's conviction and the order denying his motion for a new trial.

1. *Motion to suppress.* Pursuant to an anticipatory search warrant,[2] the Marlborough police conducted a search of the defendant's Saab automobile on November 8, 1996, and discovered $320 in cash and three plastic bags, each containing several bags of cocaine. The defendant contends that the warrant was invalid because the affidavit supporting its issuance failed to establish probable cause that his vehicle would contain cocaine at the time of the authorized search. The defendant

---

[1]The conviction presently before us resulted from a retrial of the trafficking indictment. The retrial was the culmination of lengthy proceedings. Originally, the defendant was convicted on several indictments charging distribution of cocaine and one for trafficking, and appealed from all the convictions. While the defendant's appeal was pending, the trial judge granted the defendant's motion for a new trial on the trafficking charge only. This left the distribution convictions for the Appeals Court to review, and it subsequently affirmed those convictions. See *Commonwealth* v. *Staines*, 49 Mass. App. Ct. 1103 (2000). As mentioned, on retrial the defendant was convicted on the trafficking charge.

[2]An anticipatory warrant is one based on an affidavit that establishes probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place. 2 W.R. LaFave, Search and Seizure § 3.7(c), at 362 (3d ed. 1996).

argues further that, even if the search warrant were facially valid, the authority to search no longer existed at the time of the search, because the police already possessed the object of the warrant, cocaine that the defendant had sold to an undercover officer. We conclude that the evidence was properly seized and that the motion to suppress was properly denied.

We summarize the information in the affidavit submitted to obtain the anticipatory warrant. The affiant, Detective Lieutenant Arthur Brodeur, a Marlborough police officer with many years experience and training in drug-related offenses, was involved in an investigation of Staines's cocaine dealing. As part of this investigation, Officer Stephan Lupien, working undercover, arranged to purchase cocaine from Staines through Debra Place, an individual cooperating with the police. During the month of October, 1996, Lupien made six controlled buys of crack cocaine from Staines. Each controlled buy was carried out in essentially the same manner. Lupien would arrange through Place to purchase cocaine from Staines and would provide Place with money for the buy. Staines, driving a Saab registered to him, would pick up Place and Lupien on a street in Marlborough. Staines would sell Place bags of crack cocaine inside the vehicle before dropping off Lupien and Place. Place later gave the bags of cocaine to Lupien.

During one of these transactions, on October 11, 1996, while Place and Lupien were riding in Staines's Saab, Place asked for more cocaine than her original request. Staines drove to the "Maplewood Ave. area," dropped off Place and Lupien, "drove up the street and then came immediately back" with more cocaine for the additional sale. Brodeur, the affiant, reasoned from this incident that Staines "had more cocaine hidden in the vehicle and didn't want anyone to see where it was hidden." On another occasion, October 31, 1996, Lupien paged Staines and arranged to purchase crack cocaine from him directly. Staines picked Lupien up in his Saab, and while the two men were in the car, Staines sold Lupien crack cocaine for $320.

The affidavit also stated that "[o]n this date" (presumably November 7, 1996, the date on which the affidavit was signed), Lupien planned to buy more cocaine from Staines by "beeping him" and meeting him in Marlborough in his Saab as on "all

previous occasions.'' The affidavit stated that the same procedure would be used for the sale as had been used in the past, and concluded that the requested anticipatory warrant would be "effective" once Lupien had arranged the sale and Staines had picked Lupien up for the transaction. Based on the above information, on November 7, 1996, Brodeur applied for and was issued an anticipatory warrant to search the defendant's Saab for "[c]ocaine."

There appears to be no dispute concerning events subsequent to the period of time encompassed by the affidavit. We recite them briefly. On November 7, 1996, Lupien arranged to make another controlled buy from the defendant. Moments after this purchase was completed, other officers stopped the defendant's vehicle and arrested him. The defendant's Saab was taken to the police station, where Brodeur searched the vehicle the following morning. The return on the search warrant indicates that three plastic bags, each containing additional bags of cocaine, and $320 in cash, the markings of which matched those of the bills Lupien used in the final controlled buy, were discovered in the Saab.

In denying the defendant's motion to suppress, the judge concluded, inter alia, that the anticipatory warrant was valid because the triggering event was adequately specified; and there was "substantial probability"[3] that the contraband would be present in the defendant's vehicle when the warrant was triggered.

The defendant first claims that the affidavit in support of the warrant did not establish probable cause that his car would contain cocaine at the time of the search. In reviewing a finding of probable cause on a motion to suppress evidence seized

---

[3]The standard for determining whether an anticipatory warrant may issue is probable cause. *Commonwealth* v. *Soares*, 384 Mass. 149, 153-155 (1981). The reference in the *Soares* opinion to the term "substantial probability" appears only in a quotation from a New York case, *People* v. *Glen*, 30 N.Y.2d 252, 259, cert. denied sub nom. *Baker* v. *New York*, 409 U.S. 849 (1972), and is immediately followed by a sentence that equates "substantial probability" with probable cause. *Commonwealth* v. *Soares, supra* at 155 ("In accordance with *this standard of probable cause*, we read G. L. c. 276, § 1, to permit search warrants to issue on a showing that concealment or possession is probable at the time a warrant is to be executed, and not solely at the time of its issuance" [emphasis supplied]).

pursuant to a search warrant, we consider only the facts contained in the affidavit and any reasonable inferences therefrom. See *Commonwealth* v. *Allen,* 406 Mass. 575, 578 (1990); *Commonwealth* v. *Jean-Charles,* 398 Mass. 752, 757 (1986). As always, the affidavit is to be read in an ordinary, commonsense manner and is not to be subjected to hypertechnical analysis. *Commonwealth* v. *Cefalo,* 381 Mass. 319, 329-330 (1980), citing *United States* v. *Ventresca,* 380 U.S. 102, 108-109 (1965).

An anticipatory search warrant is a warrant that takes effect at a specified future time and not on its issuance. *United States* v. *Gendron,* 18 F.3d 955, 965 (1st Cir.), cert. denied, 513 U.S. 1051 (1994). We have concluded previously, as have "the great majority of courts which have considered the issue," that anticipatory search warrants are not per se unconstitutional. *Commonwealth* v. *Soares,* 384 Mass. 149, 154 (1981). See *United States* v. *Gendron, supra.* As with all other search warrants, our inquiry is whether the warrant meets the requirements of the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. See *Commonwealth* v. *Gauthier,* 425 Mass. 37, 42 (1997); *Commonwealth* v. *Cefalo, supra* at 327-328. The essential question is whether there is probable cause that the evidence or contraband will be on the premises at the time the warrant is to be executed. *Commonwealth* v. *Soares, supra* at 155.[4,5]

Here, the information in the affidavit provided probable cause

---

[4]It may be that an anticipatory warrant provides greater protection against unreasonable invasion of an individual's privacy than the typical search warrant, because an anticipatory warrant requires a triggering event, the condition on which the warrant takes effect. *United States* v. *Gendron,* 18 F.3d 955, 965 (1st Cir.), cert. denied, 513 U.S. 1051 (1994). Thus, as one commentator has stated, the facts "to justify issuance of an anticipatory warrant are more likely to establish that probable cause will exist at the time of the search than the typical warrant based solely upon the known prior location of the items to be seized at the place to be searched." 2 W.R. LaFave, Search and Seizure § 3.7(c), at 366 (3d ed. 1996). See *Commonwealth* v. *Soares, supra* at 153-154.

[5]In an anticipatory warrant, the triggering event must be "clearly and narrowly defined" so that "opportunities for exercising unfettered discretion are eliminated." *Commonwealth* v. *Gauthier,* 425 Mass. 37, 43-44 (1997), quoting *United States* v. *Ricciardelli,* 998 F.2d 8, 12 (1st Cir. 1993). The defendant does not contend that the triggering event was not clearly and narrowly defined.

that cocaine would be found in the defendant's Saab when the warrant was executed. Officer Lupien's six controlled buys were all conducted in the defendant's vehicle. The defendant picked up Lupien and Place in his Saab and supplied them each time with a prearranged quantity of cocaine.[6] Detective Brodeur believed that Staines concealed cocaine somewhere in his vehicle. He based this assumption on Staines's conduct during the one controlled buy when he was asked for additional cocaine. On that occasion, the defendant dropped off Lupien and Place, drove up the street, and returned immediately with more crack cocaine. The affidavit does not state that Lupien kept the defendant's vehicle in view during the brief period of time that elapsed between the moment the defendant dropped off Lupien and Place and the time he returned with the additional cocaine. But given the short time that had elapsed ("Staines dropped . . . them off and drove up the street and then came immediately back"), the reasonable inference is that the defendant obtained the additional cocaine from within the car and not from another location, and that the drive up the street was a charade intended to prevent buyers from learning precisely where the cocaine was stored.

The defendant argues that the facts recited in the affidavit leave open the possibility that the cocaine was retrieved from some other stash location on that street, and that the buyers could have been dropped off to prevent them from discovering that location. However, the affidavit recites that after the request for additional cocaine, Staines continued driving and did not drop off Lupien and Place until they reached the "Maplewood Ave. area." If the defendant were trying to keep secret some stash location very near the drop-off point, it would make no sense to drive the buyers to that immediate vicinity before dropping them off. The more reasonable interpretation, and the interpretation provided by an officer knowledgeable in the methods used by drug dealers, was that the cocaine was in the car and that Staines simply wished to keep his customers unaware of his hiding place in the car. The facts in the affidavit, together with the reasonable inferences therefrom, supported a

[6] One time the sale was directly to Lupien, and Place apparently was not involved.

determination that there was probable cause to believe that the defendant possessed cocaine in his Saab during drug sales.

The defendant, relying on *United States* v. *Ricciardelli*, 998 F.2d 8 (1st Cir. 1993), argues that the warrant lacked probable cause because it failed to establish that cocaine was on a "sure and irreversible course" to the location to be searched, i.e., the Saab. The defendant contends that this "sure course" requirement for anticipatory warrants is constitutionally compelled, has been adopted by numerous Federal courts, and must be applied by our court. In *Ricciardelli*, postal inspectors, as part of a "sting" operation concerning child pornography distribution, created a "front" company from which the suspect evidently ordered several videotapes. An anticipatory warrant was issued authorizing the search of the suspect's home for evidence relating to his dealings with certain child pornography distributors. The warrant's triggering event was the "delivery by mail to and receipt by [the suspect] of the . . . package containing [one] videotape." *Id.* at 9.

The United States Court of Appeals for the First Circuit concluded that the warrant was invalid because the triggering event failed to establish a sufficient nexus between the object to be seized (the pornographic videotape) and the place to be searched (the suspect's home). *Id.* at 13-14. Once the suspect obtained the package from the post office, the warrant authorized a search of his residence, regardless of whether he brought the contraband there. The search, thus, was improperly conditioned not on the arrival of the videotape at the place to be searched, but simply on the suspect's receipt of the videotape, wherever he might take it. The court stated that when there is no nexus between the object of the warrant and the place to be searched at the time the anticipatory warrant issues, the warrant application must establish that the contraband sought is on a "sure and irreversible course" to its destination and that the future search of the destination is expressly contingent on the contraband's arrival there. *Id.* at 12.

The *Ricciardelli* case requires an additional showing in order to establish probable cause in an anticipatory warrant. When the evidence for which the warrant is sought is not yet in the place

where the search will occur and its delivery is within the control of the government, the government must satisfy the magistrate that it is a virtual certainty that the item will arrive at that location at the specified time, i.e., that it is on a "sure and irreversible course" to that place. *Id.* at 12-13. This additional requirement is imposed because, until the contraband arrives, there may be no nexus between the criminality and the place to be searched. The contraband is coming from some other place and is not in the defendant's control, and there is, thus, uncertainty whether it will ever be in the location to be searched.

Although the Supreme Court has not yet had occasion to consider this precise issue, see 2 W.R. LaFave, Search and Seizure § 3.7(c), at 365 (3d ed. 1996 & Supp. 2004), other circuit courts of the United States Court of Appeals have required a "sure course" for the issuance of anticipatory warrants. See, e.g., *United States* v. *Vesikuru*, 314 F.3d 1116, 1122 (9th Cir. 2002); *United States* v. *Goodwin*, 854 F.2d 33, 36 (4th Cir. 1988). State courts have applied the "sure course" requirement as well. See *State* v. *Gonzalez*, 143 N.H. 693, 700 (1999); *State* v. *Smith*, 124 N.C. App. 565, 572 (1996); *State* v. *Womack*, 967 P.2d 536, 544 (Utah Ct. App. 1998); *State* v. *Meyer*, 216 Wis. 2d 729, 743 (1998).

Our case presents a different fact situation, rendering the *Ricciardelli* line of cases inapplicable. Here, the issue is not the certainty of arrival of the contraband, but the time of its arrival. The nexus between the criminality and the car is clear. The numerous controlled buys detailed in the affidavit establish that the car was used by the defendant to sell cocaine, and the reasonable inference from the one sale in which additional cocaine was requested (and provided) is that the defendant kept a larger stash of cocaine in the car when making a sale. The only question is the time when the cocaine will be in the vehicle. That question is answered in the affidavit: it is the time when the undercover officer will arrange for another buy of cocaine. Once the triggering event occurred, there would be probable cause that cocaine would be in the vehicle. Further, unlike the *Ricciardelli* situation, the arrival of the cocaine in the location

to be searched was not in the control of the government or any third party; it was within the control of the defendant.[7]

The defendant further claims that the warrant was no longer valid when Detective Brodeur conducted the search because the police had already seized the subject matter of the warrant, i.e., the cocaine that Lupien had purchased from the defendant during the controlled buy immediately prior to the defendant's arrest and seizure of his vehicle. The defendant incorrectly assumes that the search warrant's authority was limited to searching for the cocaine Lupien purchased. The warrant authorized a search for "[c]ocaine; a class B controlled substance in Massachusetts." Nothing in the affidavit or in the warrant itself suggests that it was limited to the cocaine involved in Lupien's last buy, and it is unreasonable to interpret the warrant in such a restricted manner. When the police applied for the warrant, they expected they would be buying the cocaine Lupien had ordered from Staines; they did not need a warrant to obtain it. The obvious purpose and scope of the warrant was a search of the defendant's vehicle for additional concealed cocaine.[8]

2. *Denial of motion for a new trial.* The defendant challenges the denial of his motion for a new trial on three grounds. He claims that the judge erred in failing to grant a new trial because of (a) newly discovered evidence that would corroborate the defendant's trial testimony that another person had driven his car; (b) the failure to instruct on a lesser included offense; and (c) the prosecutor's improper statements in opening and closing argument. The defendant alleges that the first two contentions — failure to present available corroborative testimony and failure to request instruction on a lesser included offense —

---

[7]Other courts have "doubt[ed]" that the "sure course requirement" is applicable when neither the government nor a third party is involved in the delivery of the contraband. See, e.g., *United States* v. *Brack*, 188 F.3d 748, 757 (7th Cir. 1999). See also *United States* v. *Rowland*, 145 F.3d 1194, 1203 n.3 (10th Cir. 1998) ("It is unclear how, or whether, the heightened 'sure course' requirement applies to anticipatory warrants outside the controlled delivery context").

[8]The defendant also claims that his trial counsel was constitutionally ineffective for failing to renew the motion to suppress at trial. Because the defendant's renewed motion would not have been successful, he has no viable claim for ineffective assistance of counsel on that basis. *Commonwealth* v. *Conceicao*, 388 Mass. 255, 264 (1983).

were the result of ineffective assistance of counsel. In reviewing the denial of a motion for a new trial, we examine the motion judge's conclusion only to determine whether there has been an abuse of discretion or other error of law. *Commonwealth* v. *Grace*, 397 Mass. 303, 307 (1986). We give special deference to the action of a motion judge who was also the trial judge. *Id.*

a. *Newly discovered evidence.* To prevail on a claim of ineffective assistance of counsel, the defendant must establish that counsel's performance reflected "serious incompetency, inefficiency, or inattention . . . falling measurably below that which might be expected from an ordinary fallible lawyer," and that such inadequacy "likely deprived [him] of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Effective assistance of counsel includes conducting adequate investigation. *Commonwealth* v. *Roberio*, 428 Mass. 278, 279-280 (1998). "To prevail on a new trial motion based on allegedly newly discovered evidence, a defendant must establish that the evidence is in fact newly discovered, is both credible and material, and that it casts real doubt on the justice of the conviction." *Commonwealth* v. *LaFaille*, 430 Mass. 44, 55 (1999), citing *Commonwealth* v. *Grace*, *supra* at 305. We summarize the facts relevant to this dual claim that newly discovered evidence existed and that it was constitutionally ineffective assistance for defense counsel not to obtain and make use of it.

Following the defendant's original conviction in 1998, a motion for a new trial on the trafficking charge was allowed on the ground of ineffective assistance of counsel. The alleged ineffective assistance of counsel at that time arose as a result of counsel's failure to offer the testimony of one Richard Fletcher. The defendant was retried in 2001 solely on the trafficking charge. That indictment alleged that on November 7, 1996, the defendant possessed with intent to distribute twenty-eight grams or more (but less than one hundred grams) of cocaine. The Commonwealth's evidence at the retrial consisted of evidence concerning three of Officer Lupien's undercover buys from the defendant and certificates of analysis that the drugs purchased

were cocaine.[9] The Commonwealth also introduced photocopies of the "marked money" ($320) Officer Lupien used for the final purchase of cocaine from the defendant on November 7, 1996. This money was found hidden under the front seat of the defendant's car and the serial numbers on the bills matched the serial numbers of the bills Officer Lupien used to make the purchase. The Commonwealth introduced the cocaine (31.86 grams) that was found in the search (authorized by the anticipatory warrant) of the defendant's car after the defendant's arrest. Certificates of analysis and weight for this cocaine, the amount of which formed the basis for the trafficking indictment, were submitted. A Marlborough police officer also testified that, after his arrest, the defendant stated that he sold drugs to supplement his income in the winter when his regular work was "slow." Finally, the Commonwealth submitted expert testimony of Lieutenant Brodeur describing how cocaine was typically packaged and sold in Marlborough in the fall of 1996 (the relevant time) and how motor vehicles were used both for making sales and for hiding contraband.

The defense was that the cocaine hidden in the dashboard was not the defendant's, and Staines testified to this effect. Although the defendant admitted that he sold cocaine to Officer Lupien,[10] and he also admitted that he had placed the $320 from Lupien's final purchase on November 7, 1996, under the front seat of the car, he maintained that the cocaine hidden behind the car's dashboard was not his. He testified that while he was in Pennsylvania for a few weeks, in August, 1996, he loaned his car to his friend, Richard Fletcher. To support the defense that the cocaine in the dashboard did not belong to the defendant, trial counsel introduced an affidavit of Fletcher stating that he had borrowed the defendant's car in August, 1996, while the defendant was in Pennsylvania; that the cocaine in the car was his; and that he had forgotten that he had stored it behind the

[9]Evidence of these transactions was admitted to show knowledge, intent, and plan, and the judge instructed the jury accordingly. The Commonwealth chose not to introduce evidence of all prior sales.

[10]As the defendant was tried only on the trafficking charge, admitting to sales of the smaller amounts of cocaine did not affect substantively the trafficking indictment.

dashboard of the car.[11] Two attorneys who had previously represented the defendant also testified that Fletcher had admitted that the cocaine in question was his.[12] The defendant stated further that he received a telephone call while he was in Pennsylvania and thereby learned that, while Fletcher was driving the car, it had been towed by the police. The defendant arranged for someone to retrieve his car.

The defendant's claim of newly discovered evidence stems from the following facts. Defense counsel learned from his client on the second and final day of testimony at the retrial that, while Fletcher was driving the defendant's car, the car was stopped, Fletcher arrested, and the car impounded. Accordingly, in cross-examination of Detective Brodeur, defense counsel inquired whether Brodeur was aware of the stop and arrest of Fletcher and the impoundment of the defendant's car. This question was asked in an effort to buttress the defendant's claim that Fletcher had been driving the defendant's car. But the officer responded in the negative. At the "very end" of the retrial testimony, the defense attorney apparently learned for the first time that while Fletcher was driving the defendant's car in August, 1996, he was stopped by the Marlborough police and a passenger in the car, Donald Greer, was the individual arrested, not Fletcher. Once the defense counsel became aware of the arrest of Greer, counsel sent an investigator during a break in the trial to examine the Marlborough police department records. In the short time available, the investigator was unable to locate any records concerning Greer. During closing argument, the prosecutor argued, inter alia, that the defendant and Fletcher were not credible. On retrial, the defendant was convicted.

At the evidentiary hearing on the motion for a new trial, the defendant submitted evidence in the form of affidavits and official police and court records. This evidence indicated that while Fletcher was driving the defendant's vehicle in August, 1996, he was in fact stopped by the Marlborough police; Donald

---

[11]Fletcher was unavailable as a witness at trial. The judge ruled the affidavit admissible because the statement met the requirements of a statement against penal interest. See *Commonwealth* v. *Charles*, 428 Mass. 672, 677-678 (1999).

[12]This testimony was also admitted by the judge as a statement against penal interest.

Greer was a passenger; Greer was arrested on a default warrant; and the defendant's vehicle was towed. An affidavit of the defendant's investigator stated that he was able to obtain the relevant police log noting Greer's arrest only after a two-hour search of police records.

The defendant now contends that trial counsel at his retrial was ineffective for not having conducted sufficient investigation to uncover the evidence that would have corroborated the defendant's trial testimony that Richard Fletcher had driven his car. According to the defendant, such evidence would have strengthened his credibility and that of Fletcher and would have assisted his defense that it was Fletcher who had hidden the drugs behind the dashboard.

The judge rejected this contention as a ground for a new trial.[13] He concluded counsel was not ineffective for failing to present testimony concerning Greer. He found that counsel had not learned of Greer until the "very end of . . . protracted criminal legal proceedings" and could not "be thought to be ineffective on that score." This was particularly true, the judge found, when the original motion for a new trial had been allowed because of the absence of Fletcher's testimony, and the defendant presumably was the one with access to Fletcher. Alternatively, the judge concluded that, whatever the merit of counsel's performance, there was no loss of an available defense. He reasoned that, although this additional evidence would have bolstered the defendant's credibility and helped to establish that Fletcher was driving the defendant's car, the additional evidence did not warrant an inference that Fletcher left the drugs in the car. As the judge indicated, that Fletcher was driving the car is not the issue in dispute, and the new evidence goes only to that point. It does not affect the central issue in the case: whether, although the car had been borrowed three months earlier, another person had placed the drugs in the car at that time and then forgotten about them.[14] Thus, the judge determined that "there was no loss of an available defense, because the

---

[13]The judge issued his findings and rulings from the bench at the conclusion of argument on the motion.

[14]Testimony at retrial indicated that the value of the crack cocaine hidden in the dashboard was approximately $2,500.

evidence, while no doubt important, did not go to the central issue in the case."

The motion for a new trial was properly denied on this basis. The defendant did not establish that the evidence was in fact newly discovered, that it was both credible and material, and that it cast real doubt on the justice of the conviction. The first point requires a showing that reasonable diligence would not have uncovered the evidence by the time of trial. *Commonwealth* v. *LaFaille*, 430 Mass. 44, 55 (1999). Given the fact that there was a relationship between the defendant and Fletcher and there was no showing why the defendant did not provide counsel with this information about Greer's arrest until the second trial was underway, the judge had a basis for concluding that the evidence was not "newly discovered."[15] Further, the evidence that Fletcher had used the defendant's car was already before the jury. The allegedly new evidence would not have been material, however, because it did not affect the main issue in the case: who placed the cocaine behind the dashboard. The judge was justified in reaching this conclusion. For the same reasons, the judge did not abuse his discretion in determining that counsel did not fall below the level of an ordinary, fallible lawyer and that even if there were any inadequacy, it did not deprive the defendant of an otherwise available, substantial ground of defense. *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

b. *Opening statement and closing argument.* The defendant argues that certain remarks made by the prosecutor during his opening statement and closing argument were improper and that the judge abused his discretion in denying a new trial on this

[15]The defendant suggests that with "minimal diligence" counsel could have asked Staines or Fletcher whether any police action had been taken against Fletcher that would have generated objective information to support the fact that he was stopped by the police. It is only speculation that such inquiry would have produced information relative to Greer. Indeed, as soon as trial counsel learned about Greer, he reacted rapidly and appropriately, by having his investigator "pull names" at the Marlborough police department in an attempt to locate a record concerning Greer. Nothing was found and there was no indication that a further search would yield more information. Counsel cannot be faulted for the reluctance or inadvertence of his client in failing to provide him with the information necessary to conduct a more thorough investigation.

account. As there was no objection to any of the comments at trial, and as the motion judge did not resurrect these issues, see *Commonwealth* v. *Oliveira*, 431 Mass. 609, 612 (2000), *S.C.*, 438 Mass. 325 (2002) (confining his analysis to whether a miscarriage of justice had occurred), we review any claimed error to determine whether it created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Randolph*, 438 Mass. 290, 295 (2002). See also *Commonwealth* v. *Hallet*, 427 Mass. 552, 553-554 (1998). We conclude that neither statement was improper.

The defendant asserts that a sentence in the prosecutor's opening was improper: "This case, quite simply, is about the business of selling drugs, and about shunning responsibility and getting caught red-handed selling drugs." He contends that the remark mischaracterized the case as one concerning the selling, not the trafficking, of drugs; burdened his decision to stand trial and his right to remain silent; and diminished the requirement that the Commonwealth prove its case beyond a reasonable doubt. In his ruling on the motion for a new trial, the judge concluded that the remark referred to anticipated evidence: the defendant's pretrial statements to the police that there were no drugs in the vehicle and his denial of any knowledge of their presence. The judge also recalled that at the outset of the trial he instructed the jury that openings were not evidence and repeated that instruction "forcefully at the end of the trial." The judge concluded that it would be "unreasonable" to determine that "justice was not done."

The prosecutor's remark did not exceed the permissible purposes of an opening statement. "The proper function of an opening is to outline in a general way the nature of the case which the counsel expects to be able to prove or support by evidence." *Commonwealth* v. *Croken*, 432 Mass. 266, 268 (2000), quoting *Commonwealth* v. *Fazio*, 375 Mass. 451, 454 (1978). The prosecutor's expectation must be reasonable and grounded in good faith. *Commonwealth* v. *Fazio, supra* at 456. Read in context, the challenged remark merely outlined the case and the evidence the prosecutor expected to present. The description of the case as one concerning the "business of selling drugs" was an introduction to the elements of trafficking,

and following the challenged comment, the prosecutor immediately outlined the elements as "possessing with the intent to distribute or sell or give away a large quantity of cocaine." Further, it was reasonable for the prosecutor to expect that evidence regarding the defendant's possession and sales of cocaine on previous occasions would be introduced because the judge had ruled them admissible for limited purposes (to show knowledge, intent, and plan). Also expected was evidence of the large stash behind the dashboard and the defendant's admission to the police that he sold drugs to supplement his income. Thus, the case was about a person in the "business of selling drugs." Indeed, a lay definition of "trafficking" would be the "business of selling drugs."

Likewise, the prosecutor's comment that the defendant was "shunning responsibility" may fairly be read as a reference to the defendant's repeated denials to the police that his vehicle contained drugs. This reading is supported by evidence that was introduced of such denial by the defendant to the police. These comments did not diminish the Commonwealth's burden of proof. Finally, the judge instructed the jury that opening statements were not evidence.

The defendant also contends that the prosecutor improperly argued facts not in evidence during his closing. Specifically, the defendant takes issue with the prosecutor recounting Officer Lupien's testimony as follows: "He told us he saw the light go on, the interior light and he (the defendant) was leaning toward the center of the car doing something." Again, there was no objection to the remark at trial. At the hearing on the motion for a new trial, the judge concluded that this sentence was an innocent misstatement and that the remark did not result in a miscarriage of justice.

The motion judge did not err. "Remarks made during closing argument are considered in the context of the entire argument, and in light of the judge's instructions to the jury and the evidence at trial." *Commonwealth* v. *Viriyahiranpaiboon*, 412 Mass. 224, 231 (1992). The prosecutor's comment was a minor misstatement. The essence of the argument was that the defendant, who was alone in his car, drove a short distance away, remained in the vehicle within the view of the undercover

officer,[16] and returned very shortly thereafter with more cocaine to sell. This argument was supported by the evidence at trial and the reasonable inferences therefrom. The additional statement about the interior light going on and the defendant leaning toward the "center" of the car merely added "colorful detail," to use the motion judge's words. In light of the evidence at trial, and the judge's instructions that closing arguments were not evidence, the statement did not create a substantial risk of a miscarriage of justice.[17]

3. *Instruction on lesser included offense.* The defendant next contends that trial counsel was ineffective in failing to request the judge to instruct that the defendant could be convicted of the lesser included offense of trafficking in fourteen to twenty-eight grams of cocaine (as opposed to trafficking in over twenty-eight grams). The basis for this contention is that three separate packages of cocaine were discovered in the dashboard of the defendant's car, two of them with chunks of crack cocaine that totaled approximately twenty-six grams and a third (of almost six grams) with white powder cocaine. The defendant argues that an inference could be drawn that he could have possessed the powder cocaine simply for his own use, based on its smaller quantity and the lack of evidence of his distribution of powder cocaine.[18] A conclusion that the powder cocaine was for his use only would reduce the amount of cocaine for distribution (and trafficking) to under twenty-eight grams.

The judge concluded that there was no evidence that supported a lesser included offense instruction and that counsel therefore was not ineffective for not requesting such an instruction. Again, our review is for abuse of discretion or other error of law. See *Commonwealth* v. *Grace*, 397 Mass. 303, 307

---

[16]Testimony that the car remained in the view of the officer was elicited at trial; that fact was not contained in the affidavit for the anticipatory warrant.

[17]The judge also stated that to the extent this issue constituted an ineffective assistance claim, failure to object to these comments did not constitute ineffective assistance of counsel. He determined that the statements were not so egregious that an ordinary fallible attorney would have objected and that any such failing did not deprive the defendant of an otherwise available substantial defense. On appeal, the defendant does not claim ineffective assistance of counsel on this ground.

[18]The evidence of the defendant's prior sales of cocaine to the undercover officer involved the sale of crack cocaine only.

(1986). The judge must instruct on a lesser included offense if the evidence at trial provides "a rational basis for acquitting the defendant of the crime charged and convicting him of the lesser included offense." *Commonwealth* v. *Souza*, 428 Mass. 478, 493-494 (1998), quoting *Commonwealth* v. *Donovan*, 422 Mass. 349, 352 (1996).

The short answer to this contention is that the defendant was not entitled to a lesser included instruction based on the evidence at trial. There was no evidence that the defendant was a cocaine user or of what amounts of cocaine would support an inference of personal use. All the evidence indicated that the defendant sold drugs. Moreover, the defense was that the defendant was unaware of *any* cocaine in the car, not merely the crack cocaine.[19] The judge could not properly instruct on a theory not pressed at trial and for which there was no supporting evidence. Given that the defendant was not entitled to the lesser included instruction, it was not ineffective assistance of counsel not to request it. See *Commonwealth* v. *Donlan*, 436 Mass. 329, 338 (2002).

4. *Conclusion.* The denial of the motion to suppress is affirmed, the conviction is affirmed, and the denial of the motion for a new trial is affirmed.

*So ordered.*

---

[19]Indeed, any theory that the powder cocaine was the defendant's, kept for his own personal use, would make his claimed ignorance of the other two bags of cocaine — stored in the exact same location — even more improbable. Defense counsel would have sound strategic reasons for not pressing such a theory.