Macdonald, D. Lloyd, J.
The Court has reviewed the Commonwealth’s and the defendant’s submissions filed in response to the Court’s procedural order of August 28th. The Court deems it unnecessary to hold a hearing because the parties’ filings have sufficiently focused the issues. The Court DENIES the motion for the reasons that follow.
Pertinent Facts
On June 29, 2007 at approximately 10:45 a.m. the Taunton Police, in conjunction with federal postal inspectors, executed a search warrant at 11 Maple Street, apartment 6 in Taunton. The warrant had been obtained two days before on June 27th. The warrant was an “anticipatory warrant” that authorized the officers to search the premises for narcotics upon a postal inspector’s delivery of a certain package to the premises.
Taunton Police Officer Edward Pearson (“Pearson”) swore to the affidavit underlying the warrant.
After documenting Pearson’s and his named colleagues’ experience and training in narcotics enforcement, the affidavit stated that Pearson’s colleague, Major Nelson Gouveira of the Bristol County Sheriffs Department (“Gouveira”), had received information from United States Postal Inspector Brian Hendricks (“Hendricks”) that the day before, i.e., June 26th, at a U.S. Postal Service facility in Puerto Rico a trained drug sniffing dog had given “positive indication” on a certain Express Mail package addressed to a Carmen Pena at 11 Maple Street, apartment 6 in Taunton. The Pearson affidavit further recited “the sending address was incomplete.” In addition, it stated that Hendricks “stated to me that US Postal has intercepted several packages containing narcotics coming from the same area of Puerto Rico. The dog used to sniff this package is used by U.S. Customs *179 which has received training in narcotics detection. That Postal authorities believe this package contains Cocaine as this package is from an area known for Cocaine trafficking.”
The affidavit then described that earlier that day (June 27th) the package had been brought to the Taunton Police Department where a “trained narcotics sniffing dog from the Bristol County Sheriff Department . . . sniffed this same box” and “also gave a positive indication.” The affidavit further stated that according to the Taunton City Directoiy, “there is no Carmen Pena residing at 11 Maple Street” and “(t]hat it is believed that Carmen Pena is a false name.”
The affidavit requested that an “Anticipatory Search Warrant” issue, noting that “US Postal Officer Brian Hendricks has package [sic] in hand and is waiting for the search warrant before delivery.”
The search warrant issued, and it provided that it be executed “in no event later than seven days” from then and that it be executed during the daytime.
At 2 p.m. on June 27th Hendricks (dressed as a letter carrier) attempted to deliver the package to the premises, but no one was home. He left a postal form at the apartment for Carmen Pena to contact the Taunton Post Office for another delivery.
By closing time on June 27th, no one had called to retrieve the package. Hendricks then returned to the Postal Inspector’s office in Providence with the package.
The next day (June 28th) Hendricks applied for a federal warrant to search the package. In his affidavit' in support of the warrant, Hendricks recited substantially the same facts as Pearson had in the Taunton warrant application. In addition, he referenced that the “U.S. Postal Inspection Service has become aware that drug traffickers have been utilizing Express Mail service offered by the United States Postal Service to transport controlled substances.” The affidavit stated that it was in the course of Postal Inspection’s review of outgoing Express Mail packages from Puerto Rico that the inspector noted that the package was “bearing several characteristics used by narcotics traffickers.”
A United States District Court Magistrate Judge issued the warrant at 2:10 p.m. on June 28th. The package was opened at approximately 4 p.m., and it was found to contain 5.6 kilograms (over 12 pounds) of cocaine. The package was then re-wrapped and prepared for delivery to 11 Maple Street, apartment 6 the next day.
While the package was in Providence on June 28th in connection with the federal warrant being secured, a woman identifying herself as Carmen Pena came to the Taunton Post Office to pick up the package. She was informed that the package was on the mail truck and would be delivered the next day, June 29th. The woman said she would pick up the package on June 29th and left a phone number where she could be reached. However, early on the 29th the women, again identifying herself as Carmen Pena, called the Post Office and stated that she could not pick up the package.
The Taunton Police and the Postal authorities then organized a second attempt at a controlled delivery. At 10:30 a.m. on June 29th Hendricks, again dressed as a letter carrier, went to 11 Maple Street to make the delivery. This time he was met at the door by a Hispanic female who accompanied him upstairs to apartment 6. There he was greeted by the defendant, Ada Rivera. However, she identified herself as Carmen Pena. The defendant signed for the package as Carmen Pena. Hendricks left, but approximately 15 minutes later the Massachusetts warrant was executed, and the defendant was arrested on the premises. At that point the defendant stated that her true name was Ada Rivera.
Asserted Grounds for Suppression
The defendant challenges the probable cause underlying both the Massachusetts and the federal warrants on the basis that the original dog sniff of the package in Puerto Rico comprised an illegal seizure because the Postal authorities in Puerto Rico did not have reasonable suspicion to detain the package and to subject it to a sniff. The defendant argues that the authorities failed to follow the Postal agency’s guidelines as to the temporary detention and inspection by dog sniffs of suspicious packages. The defendant further challenges the warrant for its failure to clearly, explicitly and narrowly set out the anticipatory warrant’s triggering event, citing Commonwealth v. Gauthier, 425 Mass. 37, 44-45 (1997).
Discussion
A. Probable Cause and the Alleged Taint of the Initial Inspection
The defendant appears to concede that the Pearson affidavit to the Massachusetts warrant and the Hendricks affidavit underlying the federal warrant were based on probable cause. Probable cause was established in the affidavits by recitation of the circumstances of the package coming from an area in Puerto Rico known for drug trafficking, that the return address on the package was incomplete, that the named addressee did not appear in the City Directory (Massachusetts affidavit only) and that two trained drug sniffing dogs had positively responded to the package. See US v. LaFrance, 879 F.2d 1, 3 (1st Cir. 1989). See also Commonwealth v. Pinto, 45 Mass.App.Ct. 790, 793 (1998).
Instead, the defendant focuses on the circumstances of the detention of the package in Puerto Rico and submits that the seizure and exposure to the dog sniff was not based on reasonable suspicion. As such, the defendant relies on facts outside of the four corners of the affidavit. To do so, the defendant bears a heavy burden. Commonwealth v. O'Day, 440 Mass. *180 296, 297-98 (2003) (in most cases, statements contained in a search warrant’s affidavit are presumed to be true).
If the Court is to entertain facts outside the affidavit, a substantial preliminary showing is required combined with an offer of proof. Commonwealth v. Nine Hundred and Ninety-two Dollars, 383 Mass. 764, 767-68 (1981). See also Franks v. Delaware, 438 U.S. 154, 171 (1978). The showing must demonstrate an intentional or reckless misrepresentation of fact. Nine Hundred and Ninety-two Dollars at 769 n.7. As such, more than negligence needs to be demonstrated. Commonwealth v. Valdez, 402 Mass. 65, 70 (1988). Mere factual errors are insufficient. Commonwealth v. Douzanis, 384 Mass. 434, 437-38 (1981). Finally, one seeking to go beyond an affidavit’s four corners must show that the misrepresentations were material. See Commonwealth v. Pratt, 407 Mass. 647, 659 (1990); Commonwealth v. Luce, 34 Mass.App.Ct. 105, 111 (1993).
The defendant relies on the alleged false statement by the Postal Inspector in Puerto Rico that the return address on the package was incomplete. The defendant asserts that it was in all respects a complete address. When that factor is subtracted from the equation, the defendant argues “the affidavit only provides three (3) characteristics out of the possible twenty-five (25) characteristics listed in the Postal Service’s training manual.” Thus, the defendant submits that there was an insufficient objective basis to have detained the package in Puerto Rico to expose it to the dog sniff.
Although the defendant did not allege that the purported false representation was intentional or reckless, the Court will assume for these purposes (but without deciding) that it was. The next question then is whether the misrepresentation was material. It was not.
The Fourth Amendment protects a privacy interest in materials transported in the mail. U.S. v. Van Leeuwen, 397 U.S. 249, 251-52 (1970). See also Pinto, 45 Mass.App.Ct. at 792. To detain a package for even a limited period of time, reasonable suspicion is required. U.S. v. Allen, 990 F.2d 667, 671 (1st Cir. 1993). However, “ [reasonableness remains the focus of judicial inquiry.” LaFrance, 879 F.2d at 6. The court must consider “whether the detention, taken as a whole, or any step therein, was unreasonable.” Id. “Reasonableness is the ‘touchstone’ of Article 14 and the Fourth Amendment.” Commonwealth v. Roland R., 448 Mass. 278, 281 (2007).
The contours of reasonableness are drawn by a consideration of the nature of the intrusion into the privacy interest at play. Commonwealth v. Feyenord, 445 Mass. 72, 86 (2005) (issues arising from police use of dogs “have to be evaluated based on whether the privacy expectation in each of those settings is one society is willing to deem reasonable”). Here, i.e., at the mail facility in Puerto Rico, the defendant’s interest that was affected by the detention and sniff was a “possessory” one only. Such an interest is distinguished from a “liberty” interest. The latter more directly and substantially implicates a citizen’s privacy. See LaFrance, 879 F.2d at 7 (detention of mail package for dog sniff versus detention of baggage in an airport; the latter implicating a liberty interest, requiring a greater quantum of objectively suspicious facts).
The interference with the defendant’s privacy interest by the inspector’s temporary removal of the package from what the Court infers was its routine in-transit storage location and the co-incident administration of the dog sniff inspection was minimal. The presence of the objectively suspicious factors known to the experienced agent in Puerto Rico of the package being sent by Express Mail, with a handwritten address, in a size capable of transporting narcotics and from an area associated with high incidence of drug trafficking created sufficient reasonable suspicion to subject the package to the sniff. Under such circumstances, it is irrelevant that the package may not have exhibited the other 22 criteria for suspiciousness identified in the Postal Inspector’s training manual because more than the minimum threshold of suspicious circumstances had been documented.
Accordingly, there is no basis for the Court to inquire beyond the four comers of the Pearson affidavit as to the Massachusetts warrant and the Hendricks affidavit as to the federal warrant with regard to probable cause.
As noted above, both affidavits contain evidence sufficient for probable cause. Thus, there is no reason that the fruits of the two warrants be suppressed.
The Anticipatoiy Warrant
An anticipatoiy warrant is one that is sought before evidence of a crime reaches a particular location, but where the police have probable cause to believe that evidence of a crime will be at a certain premises at some definite point in the future. See U.S. v. Grubbs, 547 U.S. 90, 94-95 (2006). Such a warrant is compatible with the Declaration of Rights. Commonwealth v. Soares, 384 Mass. 149, 155 (1981).
Most anticipatoiy warrants require a condition precedent, called a “triggering event,” to occur before the warrant may be executed. To meet constitutional requirements, the triggering event in the affidavit must be “clear, explicit, and narrowly drawn.” Gauthier, supra, 425 Mass. at 44, quoting U.S. v. Ricciardelli, 998 F.2d 8, 12 (1st Cir. 1993). The purpose of the requirement is to “ensur(e) that the opportunities for exercising unfettered discretion are eliminated.” Ricciardelli at 12 (also quoted in Gauthier at 43-44).
Here, the triggering event was identified as the delivery by Inspector Hendricks of the package to 11 Maple Street, apartment 6. The warrant required that *181 it be executed during daylight hours within seven days of issuance. Hendricks attempted to make the delivery on the day the warrant issued. However, the attempt failed because there was no person at the premises to accept delivery. The next day no delivery was attempted because the Rhode Island federal warrant was secured and the package was opened in Providence. At that time it was conclusively determined to contain a large amount of cocaine. The delivery identified in the affidavit, however, was in fact accomplished the following day, two days after the warrant was secured. The search was executed in compliance with the warrant’s terms.
There is no evidence that the police manipulated the execution of the warrant to obtain unfair advantage. Gauthier at 44 (noting that avoiding “misunderstanding or manipulation by government agents” is a purpose of requiring a tightly circumscribed triggering event).
The triggering event was clear, explicit and narrowly drawn. The fact that that the precise timing of the delivery was substantially in the hands of the law enforcement team inhered in the circumstances in which the law enforcement officers found themselves, i.e., the discovery of the package containing narcotics in the course of the package’s shipment via the U.S. Mail. With a package containing twelve pounds of cocaine in their possession addressed to the defendant’s residence, a controlled delivery to someone present at the address was necessary. That control did not grant them “unfettered discretion" as to the execution of the search. This is because the search of the premises could only be undertaken if the package was in fact delivered, and the search had to occur during daylight hours within seven days of the warrant’s having been issued. For those reasons, the triggering event here was “ascertainable and preordained,” Ricciardelli, 998 F.2d at 14, and the warrant was executed accordingly.
ORDER
The Court’s orders denying the defendant’s motions to suppress the Massachusetts and the federal warrants are REAFFIRMED. The defendant’s motion for reconsideration is DENIED.